Ex Parte ALICE BAREFOOT, Widow; BETTIE JOHNSON and Husband, ROBERT JOHNSON; WINNIE BLACKMON, Widow; ILA ALLEN and Husband, J. T. ALLEN; HATTIE LEE and Husband, T. D. LEE; MATTIE ELDRIDGE, Widow; DELLA LEE, Widow; EMMIE LEE; HENRY LEE and Wife, NORA LEE.

(Filed 30 September, 1931.)

1. **Descent and Distribution A a—Where deed from father to son is supported by adequate consideration son takes by purchase.**

    A deed to lands from a father to his son reciting a consideration of natural love and affection and a further consideration of one hundred and sixty dollars, reserving a life estate with warranty and covenants of title excepting an existing judgment against the land of one hundred and sixty dollars, *Held:* the words of the consideration "natural love and affection" do not qualify the estate, and in the absence of words to the contrary the express consideration of one hundred and sixty dollars, the amount of the outstanding judgment against the land, is a valuable consideration and sufficient to support the deed and create the son a new propositus, and at his death intestate, the lands will descend to his heirs-at-law and not to those of the grantor, his father, the estate acquired by the son not being by descent, devise, gift or settlement.

2. **Same—Actual consideration paid may be shown by parol, but in absence of proof to contrary it will be deemed an adequate consideration.**

    A consideration expressed in a deed is not contractual and the actual amount paid may be shown by parol evidence, but nothing else appearing, it will be presumed that the recited consideration is correct and where a deed from a father to a son is supported by a valuable consideration and another deed is introduced as a correction thereof showing a larger amount, the later deed, if taken as correct, recites a valuable consideration under which the son would also take by purchase.

3. **Descent and Distribution B a—Where son acquires land from father by purchase and dies before father, son's heirs take exclusively.**

    The fourth canon of descent, providing that upon the death of the ancestor intestate and without lineal descendants the inheritance in land

shall descend to the next collateral relation of the person last seized, capable of inheriting, of the blood of the ancestor, is construed in connection with the sixth canon, providing that the collateral relations of the half-blood shall inherit equally with those of the whole blood, with an exception where the inheritance is transmitted to the person last seized by devise, gift or settlement, but the exception does not apply where the estate is acquired by purchase, and where a son acquires land by deed from his father and pays a valuable consideration therefor, and dies without lineal descendants prior to his father's death intestate, *Held:* the land descends to the collateral relations of the son whether of the whole or half-blood, and the inheritance is not limited to the collateral relations of the son who are also of the blood of the father, the grantor. C. S., 1654.

APPEAL by intervening petitioners from *Sinclair, J.,* holding that they are not entitled to any interest in the land described in the petition. From JOHNSTON. Reversed.

The petitioners named above brought a special proceeding, *ex parte,* before the clerk of the Superior Court of Johnston County for the partition of a tract of land containing 85 acres. They alleged that they are the sole owners thereof and tenants in common as the heirs at law of N. J. Lee, deceased. Pending the proceeding R. N. Allen, R. M. Barefoot, E. Fletcher Barefoot, Susan Jane Barefoot, and Amanda Stewart were permitted to intervene and to file a petition setting forth their claim as heirs at law of N. J. Lee. The cause was heard by the clerk upon the following facts:

1. Julius A. Lee, Jr., was the father of N. J. Lee, who died during the lifetime of the said Julius A. Lee, Jr., without lineal descendants and intestate.

2. Julius A. Lee, Jr., conveyed to the said N. J. Lee a tract of land containing about eighty-five (85) acres, by deed, dated 22 December, 1893, which is duly recorded in the registry of Johnston County, in Book H-6, page 410, and that the said deed as recorded is incorporated and made a part of this paragraph.

3. Julius A. Lee, Jr., is now dead, having died during the year of 1930.

4. The original petitioners are lineal descendants of Julius A. Lee, Jr., and are collateral relations of the whole blood of N. J. Lee.

5. The intervening petitioners are collateral relations of the half-blood of N. J. Lee, being of the blood of the mother of N. J. Lee, but not of the blood of Julius A. Lee, Jr.

6. The original petitioners claim as sole heirs-at-law of N. J. Lee as being of the blood of the ancestor, Julius A. Lee, Jr., from whom the inheritance was derived.

7. The intervening petitioners claim their proportionate part of said land as heirs-at-law of N. J. Lee, claiming that said lands were purchased and that therefore N. J. Lee became the beginning of a new line of inheritance.

The deed executed by Julius A. Lee, to N. J. Lee 22 December, 1893, contains the following provisions:

"Witnesseth: that said Julius A. Lee, Jr., in consideration of natural love and the payment of judgment to P. T. Massengill of about $160.00, to him paid by N. J. Lee, the receipt of which is hereby acknowledged, has bargained and sold and by these presents does bargain, sell and convey to said N. J. Lee and his heirs and assigns, a certain tract of land. . . .

"It is expressly understood by both parties to this deed that the party of the first part reserves his life estate upon said land and also the right of his wife, Mary Lee, to a dower thereon, if she survives. her husband, and the said Julius A. Lee, Jr., party of the first part, does hereby reserve to himself for the term of his natural life the full use and control of said land and also for his said wife a dower interest in the same after his death.

"To have and to hold the aforesaid tract or parcel of land and all privileges and appurtenances thereto belonging to the said N. J. Lee and his heirs and assigns to his and their only use and behoof forever, subject to the reservation and exceptions above set out.

"And the said Julius A. Lee, Jr., covenants to and with the said N. J. Lee and his heirs and assigns forever, that he is seized of said premises in fee and has a right to convey the same in fee simple, that the same are free from all encumbrances, except a judgment to P. T. Massengill and that he will warrant and defend the said title to the same against the claims of all persons whatever except against said judgment."

On 12 August, 1912, after the death of his wife J. A. Lee made another deed to N. J. Lee purporting to convey the same land and to correct the former deed, the only "correction" being a recited consideration of $1,200.

The original petitioners are children of Julius A. Lee, and sisters of the whole blood of N. J. Lee, the only son. N. J. Lee died in 1921.

The clerk adjudged that the original petitioners are the owners of the land and entitled to partition, and upon appeal the Superior Court affirmed the judgment and further adjudged that the intervening petitioners are not entitled to any interest in the land, not being of the blood of Julius A. Lee, from whom the inheritance came.

The intervening petitioners excepted and appealed.

*Ezra Parker and Parker & Lee for appellants.*
*Leon G. Stevens for appellees.*

ADAMS, J., after stating the case: N. J. Lee was the only son of
Julius A. Lee. While his father was living he died intestate without
lineal descendants, leaving sisters of the whole blood who, with the chil-
dren of a deceased sister, are the original petitioners. The intervening
petitioners are collateral relations of the half-blood of N. J. Lee, being
of the blood of his mother but not of his father, and in this capacity
they claim an interest in the land in suit. The trial court adjudged
that they have no interest in the land and they excepted and appealed.

The fourth canon of descent is in these words: "On failure of lineal
descendants, and where the inheritance has been transmitted by descent
from an ancestor, or has been derived by gift, devise or settlement from
an ancestor, to whom the person thus advanced would, in the event of
such ancestor's death, have been the heir or one of the heirs, the in-
heritance shall descend to the next collateral relations, capable of in-
heriting, of the person last seized, who were of the blood of such an-
cestor, subject to the two preceding rules." C. S., 1654, Rule 4.

This rule must be construed in connection with the sixth, which
provides that collateral relations of the half-blood shall inherit equally
with those of the whole blood, and that the degrees of relationship shall
be computed according to the rules which prevail in descents at common
law. *Paul v. Carter,* 153 N. C., 26; *Noble v. Williams,* 167 N. C., 112.
It is thus enacted that collateral relations of the half-blood shall inherit
equally with those of the whole blood in all cases excepting those
particularly stated in the fourth rule. The exceptions are these: (1)
cases in which the inheritance has been transmitted to the propositus
by descent from an ancestor; (2) cases in which it has been derived by
gift, devise, or settlement from an ancestor to whom the person so ad-
vanced (the propositus) would in the event of the ancestor's death have
been the heir or one of the heirs. In these two cases the inheritance
shall descend to the next collateral relations of the propositus who are
of the blood of the ancestor from whom it was derived. In *Burgwyn v.
Devereux,* 23 N. C., 582, *Chief Justice Ruffin* observed that "purchased
estates—in the popular sense of the term, purchase—descend to the
nearest relations, whether of the paternal or maternal line; and that
descended estates and certain purchased estates (which the act puts on
the same footing with those descended) descend to the nearest relations
of the blood of the ancestor or person from whom the estate moved."
The purchased estates which are on "the same footing" with estates
descended are those derived from an ancestor by gift, devise, or settle-

ment. C. S., 1654, Rule 4; *Bell v. Dozier,* 12 N. C., 333; *Felton v. Billups,* 19 N. C., 308; *Wilkerson v. Bracken,* 24 N. C., 315; *Gillespie v. Foy,* 40 N. C., 280; *Osborne v. Widenhouse,* 56 N. C., 238; *Dozier v. Grandy,* 66 N. C., 484; *Watson v. Sullivan,* 153 N. C., 246; *Poisson v. Pettaway,* 159 N. C., 650; *Forbes v. Savage,* 173 N. C., 706.

The immediate question, then, is this: Did N. J. Lee acquire his inheritance or title from his father by descent, devise, gift, or settlement? The clerk held that the deed to N. J. Lee was not such a conveyance of purchase as would change the line of descent and create a new line of inheritance. His conclusion was based in part upon the consideration recited in the first deed, the reservation of a life estate and of the right of dower, and the father's retained possession of the land—"the home place"—until his death. Without reference to these recitals the trial judge affirmed the clerk's judgment in general terms.

If J. A. Lee had died intestate, seized of the land in fee, N. J. Lee would have been one of his heirs; but if, subject to the life tenure, the son acquired his interest for value as a "purchased estate" and not by descent or by purchase in the sense of a gift, devise, or settlement, the judgment cannot be upheld. He did not take title by devise: his father died intestate. The word "gift" ordinarily imports a voluntary transfer of property by one person to another without consideration or compensation. And with respect to advancements the law is explicit. If a father having several children conveys valuable land to one of them for love and affection, or for a nominal consideration, he is presumed to have intended an advancement, the consideration not being meritorious. *Harper v. Harper,* 92 N. C., 300; *Powell v. Morisey,* 98 N. C., 426; *Stevens v. Wooten,* 190 N. C., 378. The judgment appealed from may have been founded on this principle; but in such event the presumption may be rebutted by proof that the conveyance was made for value. *Harper v. Harper, supra.*

In this case the deed recites a consideration of natural love and the payment of one hundred and sixty dollars. The words "natural love" do not qualify the estate. *Mosely v. Mosely,* 87 N. C., 69. The consideration named in the deed is presumed to be correct. *Faust v. Faust,* 144 N. C., 383. As we have said, not being contractual it may be inquired into by parol evidence; but we have discovered no parol evidence to contradict the recital. As there is no such evidence we may assume that the grantee paid Massengill $160 in satisfaction of a judgment which was a lien on the land. This payment was a valuable consideration. *Institute v. Mebane,* 165 N. C., 644; *Fertilizer Co. v. Eason,* 194 N. C., 244; *Trust Co. v. Anagnos,* 196 N. C., 327. It was not merely nominal. Retaining a life estate, Julius A. Lee retained also the possession of the

land. Whether he could have done so if the judgment had not been satisfied is not determined. At any rate the release of the lien was a benefit to the grantor and a detriment, loss, or inconvenience to the grantee who paid the money. No evidence was offered to show that the sum paid was not "near the value of the conveyed property." *Kiger v. Terry,* 119 N. C., 456. Is it not reasonable to conclude upon the admitted facts and upon an inspection of the first deed that the parties regarded the recited consideration as at least approximating the value of the interest conveyed?

The appellees say that the second deed conveyed no title and amounts to nothing. *Buchanan v. Clark,* 164 N. C., 56. The record shows that it was "offered and admitted as evidence." If it was considered as evidence of the inadequacy of the consideration named in the first deed why should not the admitted receipt of $1,200 be accepted as proof that full value was paid? If we disregard the second deed, we are still led to the conclusion that the consideration set out in the first deed is meritorious, that the grantee's estate was acquired by purchase, and not by descent, gift, devise, or settlement, and that the intervening petitioners are entitled to the relief prayed. Judgment

Reversed.