STATE OF NORTH CAROLINA, EX REL. COMMISSIONER OF REVENUE, v. SYLVIA SPEIZMAN.

(Filed 25 May, 1949.)

**1. Taxation § 29—**

A gain resulting from the involuntary conversion of a capital asset by fire is taxable under the State law as income, notwithstanding that the proceeds of the fire insurance, plus additional cash, are necessary for and are used in the restoration of the building. G.S. 105-141, G.S. 105-142 prior to the amendments of 1949.

**2. Taxation § 23 ½—**

G.S. 105-142 (1) stipulating that the Commissioner of Revenue shall follow the Federal practice as nearly as practicable in instances where the method of accounting of the taxpayer does not clearly reflect the income of the taxpayer, does not require the Commissioner of Revenue to apply the provisions of sec. 112 (f), 26 U.S.C.A. 95, in computing the income of a taxpayer from involuntary conversion of a capital asset.

**3. Same—**

The administrative interpretation of a tax statute, acquiesced in over a long period of time, should be given consideration in the construction of the statute.

**4. Taxation § 29—**

The act amending sec. 1, Art. 4, schedule D, subchap. 1 of Chap. 105 (G.S. 105-144.1), adopting the Federal rule for determining income tax upon the involuntary conversion of a capital asset, does not authorize the Commissioner of Revenue to refund income tax legally assessed and collected upon such capital gain prior to the enactment of the 1949 statute, even though the tax was paid under protest.

APPEAL by plaintiff from *Clement, J.,* at February Term, 1949, of MECKLENBURG.

This is a proceeding to determine the validity of an assessment for additional income taxes against Sylvia Speizman for the year 1946, growing out of a gain resulting from the involuntary conversion of a capital asset.

The facts pertinent to this appeal are as follows:

1. Sylvia Speizman, hereinafter called the taxpayer, was the owner of a building in the City of Charlotte, that was partially destroyed by fire on 6 March, 1946. The appraised value of the building before the fire, according to the insurance adjusters, was $78,000. The adjusters estimated the damage caused by the fire at $55,000, and the fire insurance companies which had issued policies of insurance upon the building paid to the taxpayer during the month of April, 1946, the aggregate sum of $55,000, in settlement of the fire damages sustained by the taxpayer. The said sum of $55,000 was set aside by the taxpayer for the purpose of paying the cost of reconstructing and restoring the building, and this sum, together with an additional sum of $5,464.10, was paid to architects and the building contractor for their services and work in connection with the repair of the damaged building. The work of repairing the damaged building was completed in December, 1946.

2. The building in question was acquired by the taxpayer in 1943, at the price of $22,500 (exclusive of the cost of the land). At the time of the fire, depreciation in the amount of $2,700 had been taken for income tax purposes, leaving an unrecovered cost of the building of $19,800. When the taxpayer filed her income tax return for the year 1946, she did not include as taxable income the difference between the amount received from the insurance companies on account of the fire loss and the unrecovered cost of the building, such difference being $35,200.

3. Under date of 4 May, 1948, the Commissioner of Revenue, pursuant to G.S. 105-160, gave to the taxpayer a notice of proposed additional tax assessment on the capital gain of $35,200. Within the time fixed by statute, the taxpayer duly protested the proposed assessment and asked for and received a hearing by the Commissioner. The protest of the taxpayer was rejected and the additional tax, together with interest, was paid under protest on 3 August, 1948, which tax and interest amounted to $2,636.13.

4. Thereafter, the taxpayer requested a revision of the assessment against her, pursuant to the provisions of G.S. 105-162. After a further hearing and consideration of the matter, the Commissioner of Revenue found the facts as herein stated and concluded as a matter of law that the additional tax and interest in the amount of $2,636.13, had been legally and properly assessed against the taxpayer for the year 1946, and denied the request for a revision of the assessment.

5. The taxpayer filed exceptions to the Commissioner's conclusion of law and to his decision denying the request for a revision of the assessment. The exceptions were overruled by the Commissioner and the taxpayer duly appealed to the Superior Court of Mecklenburg County, pursuant to the provisions of G.S. 105-163. Whereupon the Commis-

sioner of Revenue certified to the Superior Court of the aforesaid county, his findings of fact and conclusion of law, the taxpayer's exceptions thereto, the order overruling the exceptions and the notice of appeal.

This appeal was heard in the Superior Court upon the record as certified. The decision of the Commissioner of Revenue was reversed by his Honor and judgment was entered in favor of the taxpayer in the sum of $2,636.13, together with interest as provided by law. The Commissioner of Revenue excepted to the judgment and appealed to the Supreme Court.

*Attorney-General McMullan and Assistant Attorneys-General Abbott and Tucker for the State.*

*Elton B. Taylor for defendant.*

DENNY, J.  This appeal turns on whether or not a gain resulting from the involuntary conversion of a capital asset in 1946, was taxable income under the income tax law of North Carolina. We think such gain was taxable, and that the additional assessment against the taxpayer was legally and properly made.

Net income means the gross income of a taxpayer, less deductions expressly authorized by Article 4, Schedule D, Chapter 105 of our General Statutes.

G.S. 105-141, Subsec. 1, defines "gross income," and the essential part thereof reads as follows: "The words 'gross income' mean the income of a taxpayer derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, business, commerce or sales, or dealings in property, whether real or personal, located in this or any other State or any other place, growing out of the ownership or use of or interest in such property, also from interest, rent, dividends, securities, or the transactions of any business carried on for gain or profit, or gains or profits, and income derived from any source whatever and in whatever form paid."

Subsection 2 of G.S. 105-141, sets forth a list of items which are exempt from taxation under our income tax law, but the list does not include gains from involuntary conversion of capital assets.

The appellee contends the provisions contained in G.S. 105-142, subsec. 1, require the Commissioner of Revenue to follow the Federal law in respect to gains resulting from an involuntary conversion of a capital asset. This subsection is as follows: "The net income of a taxpayer shall be computed in accordance with the method of accounting regularly employed in keeping the books of such taxpayer, but such method of accounting must be consistent with respect to both income and deductions, but if in any case such method does not clearly reflect the income, the computation shall be made in accordance with such method as in the

opinion of the commissioner does clearly reflect the income, but shall follow as nearly as practicable the federal practice, unless contrary to the context and intent of this article."

The Federal statute governing involuntary conversion is Section 112 (f), Internal Revenue Code, 26 U.S.C.A. 95, and reads as follows: "If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain)."

It is clear that a gain resulting from the involuntary conversion of a capital asset is not exempted from taxation under the Federal income tax law unless the gain is "expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property," under regulations prescribed by the Commissioner, with the approval of the Secretary. Therefore, it seems clear the gain is taxable under our income tax law, unless G.S. 105-142 relative to the computation of net income, has the effect of incorporating in the income tax article of our Revenue Act, substantive features of the Federal income tax law. We do not think this provision has that effect. For example, the Federal statute provides for "long term" and "short term" capital gains on a different basis; while our Revenue Act recognizes no distinction between "long term" and "short term" capital gains. In fact our law recognizes no distinction between "capital gains" and any other type of taxable income. Therefore, it would seem to be just as reasonable to contend that the Federal law relative to capital gains should be taken into consideration in computing net income, within the meaning of G.S. 105-142, as it is to contend the Federal statute relative to involuntary conversion of a capital asset should be given effect in making such computation.

The appellee concedes that the capital gain of $35,200 would have been taxable as such, had the taxpayer not elected to expend it in the construction of a building similar or related in service or use to the building

destroyed by fire. This would be so under the Federal as well as the State law. While this is a case of first impression with us, the Commissioner of Revenue has consistently ruled that gain realized from involuntary conversions of capital assets are taxable, regardless of how such funds may be expended. See P-H, State and Local Service, North Carolina, Paragraph 13,179. The administrative interpretation of a statute, acquiesced in over a long period of time, should be given consideration in the construction of the statute by the Courts. *Knitting Mills v. Gill, Comr. of Revenue,* 228 N.C. 764, 47 S.E. 2d 240.

We think the conclusion we have reached is the correct one, and is supported by the recent action of our General Assembly. While this proceeding was pending in this Court, the General Assembly enacted House Bill No. 1099, amending Section 1, Art. 4, Schedule D, subchapter 1 of Chapter 105 of the General Statutes, to be designated Section 105-144.1, so as to provide under certain conditions for the exemption of gains resulting from the involuntary conversion of capital assets. This Act adopts in every essential particular the provisions of Section 112 (f), of the Internal Revenue Code, 26 U.S.C.A. 95, and further provides that the Commissioner may in his discretion prescribe the rules and regulations under which such capital gains may be expended or he may "apply the Federal rules, rulings and Federal Court decisions pertinent to the administration and construction of Sec. 112 (f) of the Federal Internal Revenue Code, but the Commissioner shall not be bound by such rules and regulations, rulings and decisions."

The Act also provides that it shall affect pending litigation and shall be in effect from and after its ratification, which was 22 April, 1949.

On 5 May, 1949, the Commissioner of Revenue of North Carolina promulgated a regulation for the purpose of administering House Bill No. 1099, in which he adopted the Federal rules and regulations, rulings and Federal Court decisions pertinent to the administration and construction of Section 112 (f) of the Internal Revenue Code, and filed a copy of the regulations in the office of the Secretary of State, as required by Chapter 754 of the Session Laws of 1943, G.S. 143-195.

In considering the provisions of House Bill No. 1099, we think it can affect only such claims for exemption from income tax as may arise from gain resulting from the involuntary conversion of capital assets where such gains are expended in good faith, pursuant to a regulation duly promulgated by the Commissioner of Revenue. The mere statement in the Act that it is to affect pending litigation, will not be construed as sufficient authority to authorize the Commissioner of Revenue to refund to a taxpayer a tax legally assessed and collected prior to the enactment of the Act; and the fact that the tax was paid under protest does not affect the legality of the assessment.

The court below committed error in reversing the decision of the Commissioner of Revenue, and the judgment is

Reversed.