IN THE MATTER OF NATHAN FLEISHMAN, 1600 RAEFORD ROAD, FAYETTEVILLE, NORTH CAROLINA, ASSESSMENT OF ADDITIONAL INCOME TAXES FOR THE YEAR 1957.

(Filed 7 April, 1965.)

**1. Taxation § 28—**

Loans to a taxpayer do not constitute taxable income and should not be included as gross income on his income tax return, G.S. 105-141, and repayment of loans may not be allowed as a deduction from taxable income. G.S. 105-47.

**2. Same— Repayment of debt cannot be offset against income for taxable year in which repayment is made.**

Where over a number of years a taxpayer withdraws from his account with his employer sums in excess of his salary and bonuses and erroneously enters these amounts as taxable income, he may not offset these amounts against his taxable income for the year in which he is compelled to repay the loan, but must seek an adjustment in his income tax liability for each year in which he overdrew and do so within the time limited by G.S. 105-266 and G.S. 105-266.1, and the State is not required to allow such deduction even though the Federal Government does so, G.S. 105-142(a), there being differences between the Federal and State statutes and it being questionable whether the amount should be allowed under the Federal statute.

APPEAL by petitioner from *Copeland, S. J.,* May 25, 1964 Civil Term of WAKE. This appeal was docketed in the Supreme Court as Case No. 459 and argued at the Fall Term 1964.

Petitioner Fleishman (taxpayer) appeals from a judgment affirming an administrative decision of the Tax Review Board which sustained an assessment by the Commissioner of Revenue (Commissioner) of additional income tax against taxpayer for 1957 and denied his claim for a refund.

The facts are undisputed. Taxpayer is an individual reporting his income on the basis of cash receipts and disbursements. His only exception and assignment of error is to the judgment.

In 1941 taxpayer and his brother-in-law, Oscar Vatz, entered into an employment agreement with taxpayer's father, Morris Fleishman, owner of Fleishman's Big Store in Fayetteville, under which agreement taxpayer would receive a salary of $12,000.00 per year and Oscar Vatz, a salary of $8,000.00 per year. The annual net profits of the business in excess of $21,000.00 were to be split equally between taxpayer and his brother-in-law. This agreement remained in effect until 1952, when the salaries were discontinued and the entire profits were divided equally between taxpayer and his brother-in-law.

During the years 1950-1956 taxpayer withdrew cash from the business in addition to his salary and bonus, a total of $42,065.03. During the same period taxpayer reported and paid income taxes on his salary, his bonus, and, erroneously, on his cash withdrawals from the business. Fleishman's Big Store, taxpayer's employer, deducted as a business expense only that amount paid to taxpayer as salary and bonus and carried the cash withdrawals by taxpayer on its books as loans.

In 1957 Morris Fleishman died. Upon investigation, the administrator determined that taxpayer had withdrawn $42,065.03 in excess of his salary and share of the business profits and that his brother-in-law had withdrawn $28,000 in excess of his share. Both taxpayer and his brother-in-law repaid their excess cash withdrawals to the administrator during 1957. Taxpayer's repayment to his employer was accomplished by deducting the amounts of his excess withdrawals from his distributive share of his father's estate.

On December 30, 1957, taxpayer filed a tentative individual income-tax return for the income year 1957 and remitted therewith a payment in the amount of $5,784.22, which represented taxpayer's estimated income-tax liability for 1957. Thereafter, on April 15, 1958, taxpayer filed a final, or completed, income-tax return for the income year 1957 showing an income-tax liability of $3,205.77. Taxpayer requested a refund of $2,578.45, thereby indicated on the face of the return. Examination of the final return by a representative of the Commissioner revealed that taxpayer had claimed a deduction in the same amount as his income for the year, $38,039.22. This deduction was explained by taxpayer as being a part of the amounts reported as income upon which tax had been paid during years 1950-1956 and which taxpayer was required to repay to his employer during income year 1957, the total being $42,065.03. Taxpayer limited the claimed deduction, however, to the amount of salary and bonus earned and received from his employer during the income year 1957 — $38,039.22. The examining auditor disallowed the deduction and recomputed taxpayer's 1957 tax liability without benefit of the claimed deduction. The resulting tax liability of

taxpayer for the income year 1957 was $5,868.51, or $84.29 in addition to the estimated payment made on December 30, 1957.

A notice of assessment of additional income taxes in the amount of $84.71 ($84.29 plus $ .42 interest) was transmitted to taxpayer on May 15, 1958. Taxpayer protested the proposed assessment on May 28, 1958, and requested a hearing before the Commissioner in accordance with the provisions of G.S. 105-241.1. The Commissioner held the hearing, affirmed the disallowance of the claimed deduction, and sustained the assessment of additional tax.

According to representatives of taxpayer, "federal agents," in an informal conference, agreed to allow the sum of $42,065.03 as a deduction on his 1957 federal income-tax return under the claim-of-right provision of Int. Rev. Code of 1954, § 1341.

Taxpayer gave notice of appeal to the Tax Review Board within the time permitted by statute and filed his petition with the Board on October 16, 1959. The petition was considered by the Board, and on February 24, 1960, it entered its Administrative Decision No. 30, affirming the Commissioner. Within thirty days of the receipt of the Board decision, taxpayer petitioned the Superior Court of Wake County for review of the decision under G.S. 105-241.3 and Gen. Stats. ch. 143, art. 33. From an adverse judgment on review in the Superior Court taxpayer appealed to the Supreme Court.

*McCoy, Weaver, Wiggins & Cleveland by John E. Raper, Jr., for petitioner appellant.*
*Attorney General T. W. Bruton and Assistant Attorney General Charles D. Barham, Jr., for respondent appellee.*

SHARP, J. The question presented by this appeal is: May a taxpayer who has in prior years erroneously included in his taxable income the amount of loans made to him offset these amounts against his taxable income for the year in which he repays the loans, or must he seek an adjustment of his income-tax liability for each year in which an erroneous overstatement of income occurred and within the time specified by G.S. 105-266 and G.S. 105-266.1?

Loans to a taxpayer do not constitute taxable income and should not, therefore, be included as gross income on his income-tax return. G.S. 105-141; 1 Mertens, Federal Income Taxation § 5.24 (1942 Ed.) Likewise, amounts expended to repay the principal of a loan are not allowed as deductions from taxable income. G.S. 105-147. The Commissioner concedes that taxpayer erroneously overstated his income on his tax return for the years 1950-1955 and therefore overpaid the correct amount of his taxes during these years. He found that the overstate-

ments were the result of taxpayer's accountant's error. (The Commissioner contends that it appears from tables in taxpayer's brief that he underpaid his 1956 taxes, but no deficiency was ever assessed for that year. Neither party seeks in this action an adjustment for any year but 1957.) Had taxpayer applied for a refund of any overpayment of tax for a given year "at any time within three years after the date set by the statute for the filing of the return . . . or within six months from the date of payment of such tax or additional tax, whichever is later . . . ," G.S. 105-266.1 and G.S. 105-266, clearly he would have been entitled to it. G.S. 105-266 prohibits the refund of any overpayment unless discovery is made by the Commissioner or written demand is made by the taxpayer within the time set out above.

Taxpayer contends (1) that, having included loans as income in his returns for the years 1950-1955, six years, he had established a "method of accounting"; (2) that, having repaid the loans to his employer in 1957 in an amount in excess of his compensation, under his method of accounting, he had no net income that year; and (3) that, since "federal agents" had allowed the loan repayment of $42,065.03 as a deduction from 1957 income under Int. Rev. Code of 1954, § 1341, the State should do likewise because G.S. 105-142(a) requires a taxpayer to compute his income according to a method of accounting which clearly reflects his income and also to "follow as nearly as practicable the federal practice, unless contrary to the context and intent of this article." Gen Stats. ch. 105, art. 4.

Taxpayer is without a leg to. stand on. The classification of a loan as income for the year in which the money was borrowed and as a deduction for the year in which the money was repaid not only is not an approved and generally accepted method of accounting but also is a procedure directly contrary to "the context and intent" of Gen. Stats. ch. 105, art. 4. Neither G.S. 105-141, which defines income, nor G.S. 105-147, which specifies deductions, includes loans. G.S. 105-142(a) authorizes no deductions not included in G.S. 105-147. Net income for income-tax purposes is the gross income of a taxpayer less the deductions allowed by Gen. Stats. ch. 105, art. 4.

Notwithstanding that taxpayer's unorthodox method of accounting is "contrary to the context and intent" of Gen. Stats. ch. 105, art. 4, G.S. 105-142(a), we see no way, despite the agreement of "federal agents," in which taxpayer could bring himself within the provisions of Int. Rev. Code of 1954, § 1341. See *Good's Estate v. United States,* 208 F. Supp. 521 (E. D. Mich.), wherein this section was held applicable — no loan involved. This section allows a deduction for repayment of amounts exceeding $3,000.00 "for the taxable year" when the amount repaid "was included in gross income for a prior taxable year (or years)

because it appeared that the taxpayer had an *unrestricted right to such item.*" (Italics ours.) North Carolina has no similar provision. Although a borrower may have the right to use the proceeds of a loan as he sees fit, he has a correlative obligation to repay, and this obligation to repay prevents the right to the money from being *an unrestricted right.* The proceeds of a loan belong to a taxpayer only temporarily. The withdrawals which taxpayer made from his father's business were not made under any claim of right. His contract of employment fixed his compensation, and his withdrawals in excess of his agreed compensation were entered on the books of the business as loans. The fact that taxpayer may never have intended to repay these sums does not alter the true nature of the transaction.

To allow as deductions for the tax year 1957 items which could have been the basis of claims for refunds in prior years would render every return inconclusive far beyond the time intended by the legislature. As regrettable as may be the accounting error which produced this situation for taxpayer, we cannot disregard the provisions of G.S. 105-266 and G.S. 105-266.1 in order to give him relief. The Tax Review Board, having found "that the taxes with respect to which the claim for refund was filed were not paid within the period specified under the provisions of G.S. 105-266 and G.S. 105-266.1," correctly sustained the assessment.

The judgment of the Superior Court, upholding the decision of the Tax Review Board, is

Affirmed.