RUDOLPH C. STONE AND AUDREY L. STONE v. MARK G. LYNCH, SECRE-TARY OF THE DEPARTMENT OF REVENUE

No. 8310SC451

(Filed 15 May 1984)

**1. Taxation § 28— union strike benefits—income or gift—what law applies**

The statute providing that accounting methods selected by the State "shall follow as nearly as practicable the federal practice," G.S. 105-142(a), does not apply to a decision as to whether union strike benefits constitute income or a gift under North Carolina law; nor does federal law provide the rule of decision.

**2. Taxation §§ 27, 28— union strike benefits—income or gift**

Union strike benefits constitute a gift to the recipient under North Carolina law and were thus properly excludable from the recipient's taxable income where the union assistance was based upon a moral rather than a legal obligation.

APPEAL by plaintiffs from *Farmer, Judge*. Judgment entered 17 December 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 9 March 1984.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by J. David James, for plaintiff appellants.*

*Attorney General Edmisten, by Special Deputy Attorney General Myron C. Banks, for the State.*

BECTON, Judge.

We must decide in this case whether union strike benefits are taxable as income to the recipient under North Carolina law, or whether they qualify as a gift, thereby allowing the taxpayer to exclude them from taxable income. We reverse the trial court, and we hold that the benefits constitute a gift and that plaintiff taxpayers are entitled to a refund on income tax paid on strike benefits.

I

The Communications Workers of America (CWA) organized a local in early 1979 at plaintiff Rudolph Stone's place of employment.[1] Plaintiff joined CWA in September, 1979, and several weeks later the local went out on strike. The strike lasted about eight weeks, ending on 29 November 1979. Although it had no legal obligation to do so, CWA provided financial assistance to the strikers, including plaintiff. CWA made these payments, based on need, from information supplied by the strikers. During the strike, plaintiff received $1,879.95 in benefits, for groceries, utilities, household, medical, and other expenses. On his tax return for 1979, plaintiff reported the $1,879.95 as "non-taxable" income, based on information from CWA that it considered the benefits a gift to him. The Department of Revenue subsequently

1. Plaintiff Audrey Stone received no taxable income during the tax year in question. She is only a nominal party to this action.

notified plaintiff that it considered the benefits taxable income. Plaintiff paid the deficiency and sued for a refund; from an order denying relief, he appeals.

## II

The definition of gross income under the North Carolina law is very broad. *See* N.C. Gen. Stat. § 105-141(a) (Supp. 1983). However, the law provides certain exceptions, including the following exclusion pertinent to this case: "The words 'gross income' do not include the following items, which shall be exempt from taxation under this Division . . . . (3) The value of property acquired by gift, bequest, devise or descent. . . ." N.C. Gen. Stat. § 105-141(b) (Supp. 1983). Each side urges a differing construction of the word "gift." How we define that statutory term will decide the outcome of this case.

Plaintiff argues that North Carolina law should supply the rule of decision, and that the definition of gift should be that used in *Foreman Mfg. Co. v. Johnson, Comm'r of Revenue*, 261 N.C. 504, 135 S.E. 2d 205 (1964). The State takes a contrary view and argues that the trial court correctly applied the federal standard, which allows a significantly narrower exclusion under virtually identical statutory language. *See* 26 U.S.C. § 102(a) (1982); *Comm'r v. Duberstein*, 363 U.S. 278, 4 L.Ed. 2d 1218, 80 S.Ct. 1190 (1960). When North Carolina and federal statutes contain identical language, federal interpretations are instructive to supplement North Carolina decisions. *See Love v. Pressley*, 34 N.C. App. 503, 239 S.E. 2d 574 (1977), *disc. rev. denied*, 294 N.C. 441, 241 S.E. 2d 843 (1978). This applies especially to income taxation law in which the North Carolina decisions are few by comparison and the state and federal systems are closely interrelated. Our courts have relied heavily on federal tax decisions in the past, as, for example, in the *Foreman* case itself.

[1] Nevertheless, we believe that when North Carolina's appellate courts have supplied rules of decision, those must control. Our Supreme Court has expressly rejected arguments that federal decisions, even those interpreting identical language, control the courts of this State in the interpretation of state law. *Bulova Watch Co. v. Brand Distributors, Inc.*, 285 N.C. 467, 206 S.E. 2d 141 (1974). An examination of the North Carolina income tax statutes supports our conclusion. The General Assembly has

specifically provided at numerous places therein that the State shall follow federal practice. *See* N.C. Gen. Stat. § 105-141(b)(9), (10), (17), (19), (23) (Supp. 1983) (exclusions from gross income); N.C. Gen. Stat. § 105-144(b) (Supp. 1983) (definition of gain and loss); N.C. Gen. Stat. § 105-145(e) (Supp. 1983) (like kind exchanges); N.C. Gen. Stat. § 105-147(8), (16), (20) (Supp. 1983) (deductions). The absence of such language in G.S. § 105-141(b)(3) leads to the inference that, by exclusion, the legislature intended federal practice *not* to control it. *See State ex rel. Hunt v. Reinsurance Facility*, 302 N.C. 274, 275 S.E. 2d 399 (1981) (applying maxim *"expressio unius est exclusio alterius"*). It is true that N.C. Gen. Stat. § 105-142(a) (1979) provides that accounting methods selected by the State "shall follow as nearly as practicable the federal practice. . . ." This provision, however, does not *mandate* use of federal accounting practices. *See Watson v. Watson Seed Farms, Inc.*, 253 N.C. 238, 116 S.E. 2d 716 (1960) (use of federal practice permitted); *In re Virginia-Carolina Chem. Corp.*, 248 N.C. 531, 103 S.E. 2d 823 (1958) (similar; policy explained). And our Supreme Court has held that G.S. § 105-142(a) does not authorize any deductions not specifically authorized by North Carolina statute, *In re Fleishman*, 264 N.C. 204, 141 S.E. 2d 256 (1965), nor does it require use of federal tax treatments. *State ex rel. Comm'r of Revenue v. Speizman*, 230 N.C. 459, 53 S.E. 2d 533 (1949). Classification of certain payments as gifts does not appear to be an "accounting method." *See* 26 U.S.C. § 446 (1982); Black's Law Dictionary 18 (5th ed. 1979). We, therefore, hold that G.S. § 105-142(a) (1979) does not apply and that federal law, while instructive, does not provide the rule of decision.

We turn then to the only North Carolina case which has construed G.S. § 105-141(b)(3) (Supp. 1983), *Foreman*. In *Foreman*, an officer-stockholder of a corporation forgave a $70,000 debt owed him by the corporation. The corporation sued for a refund of taxes assessed on the forgiveness of debt, and the Supreme Court ruled that the forgiveness constituted a contribution to capital, which was, under the tax circumstances of the case, the equivalent of a gift. The *Foreman* Court ruled:

> The value of property acquired by gift is excluded from both State and Federal income tax. G.S. 105-141(b)(3); Int. Rev. Code of 1954 § 102. A gift is usually defined as a voluntary transfer of property by one to another without any con-

sideration therefor. Theoretically, a contribution by a stockholder increases the resources of the corporation and the value of all the stock, including his own, proportionately. This business aspect removes such a transaction from the concept of a pure gift. However, such a gift to a corporation necessarily constitutes a gift to the other stockholders.

In *American Dental Co.*, . . . the Supreme Court held that the gratuitous release by creditors of accrued rent and interest on merchandise purchased constituted a gift to the corporation which was not subject to income tax. The court said: 'The fact that the motives leading to the cancellation were those of business or even selfish, if it be true, is not significant. The forgiveness was gratuitous, a release of something to the debtor for nothing, and sufficient to make the cancellation here gifts within the statute.' [Citation omitted.] The creditors-donors in *American Dental Co.* were not stockholders. When a creditor who is a stranger to the corporation forgives its debt to him, the forgiveness is exempt from income tax under the exclusion of gifts. When a stockholder gratuitously cancels the debt the corporation owes him, the transaction is denominated a contribution to capital. [Citations omitted.]

We hold that the forgiveness of the debt in question constituted a contribution to the capital of the plaintiff corporation and was therefore not taxable income.

261 N.C. at 507, 135 S.E. 2d at 208 (quoting *Helvering v. American Dental Co.*, 318 U.S. 322, 331, 87 L.Ed. 785, 791, 63 S.Ct. 577, 582 (1943)).

Of importance to the present case is the *Foreman* Court's reliance on the cited language from *American Dental Co.* By adopting the language that business or selfish motives are insignificant in determining classification as a gift, and by focusing solely on the legal obligations of the donor, the Court effectively rejected, *for North Carolina income tax purposes*, the test adopted by the United States Supreme Court in *Duberstein*, some four years before *Foreman*. The *Duberstein* Court looked beyond the legal and moral obligations of the parties to the donor's intent to recompense the donee for past services or to induce future beneficial services. The *Duberstein* Court found a clear distinction

between the traditional meaning of "gift" and its definition under the tax statutes. The holding in *Foreman*, on the other hand, means that for North Carolina income tax purposes the definition of gift remains what it was at common law: "a voluntary transfer of property by one to another without any consideration therefor." *Id.* at 507, 135 S.E. 2d at 208; *Ex parte Barefoot*, 201 N.C. 393, 160 S.E. 365 (1931).

[2] We now apply the foregoing test to the facts of this case. It is unquestioned (a) that the benefits were property, (b) that they were voluntarily transferred by CWA, and (c) that the transfer was to another — that is, to plaintiff. The crucial element therefore becomes whether there was any consideration for the transfer. The trial court found as fact that "Union assistance was based upon *moral* obligation." (Emphasis added.) Plaintiff performed certain strike duties; the court found that "Plaintiff was morally obliged to perform strike duties." Both parties concede that these findings are conclusive. The trial court did not find that CWA had any *legal* obligation of any kind to pay benefits, or that there was any other consideration for their payment. We find nothing in the record supporting such a conclusion.

Therefore, the only possible consideration for the payment of the benefits was the moral obligation owed by CWA to plaintiff and plaintiff's moral obligation to participate in strike duties. It is firmly settled, however, that except in cases of consanguinity or similar relationship, or when there is some antecedent debt or legal obligation, a moral obligation alone does not constitute consideration. *See Carolina Helicopter Corp. v. Cutter Realty Co.*, 263 N.C. 139, 139 S.E. 2d 362 (1964); *Cruthis v. Steele*, 259 N.C. 701, 131 S.E. 2d 344 (1963); *Exum v. Lynch*, 188 N.C. 392, 125 S.E. 15 (1924); *see also* Restatement (Second) of Contracts §§ 71-73 (1981); 17 C.J.S. *Contracts* § 90 (1963); 38 C.J.S. *Gifts* § 7 (1943); 17 Am. Jur. 2d *Contracts* §§ 130-133 (1964); 38 Am. Jur. 2d *Gifts* §§ 1-2 (1968). No special relationship exists between these parties, and we discern no antecedent obligation or agreement which would cause the moral obligation to become sufficient consideration. We therefore hold that the benefits were a gift by CWA to plaintiff and thus properly excludable from plaintiff's taxable income for 1979. G.S. § 105-141(b)(3) (Supp. 1983).

The State makes much of the fact that CWA's payments to plaintiff exceeded what plaintiff should have received under

CWA's own needs guidelines. Under *Foreman*, however, the amount paid appears irrelevant: if anything, the excessive payments underscore the gratuitous nature of the benefits, since nothing "extra" was required of plaintiff in exchange for the overage. We also note in passing that even under federal law, the most recent action of the United States Supreme Court was to uphold a verdict that strike benefits are excludable from income. *United States v. Kaiser*, 363 U.S. 299, 4 L.Ed. 2d 1233, 80 S.Ct. 1204 (1960).

The judgment of the court below must therefore be reversed, and the case remanded for entry of judgment in favor of plaintiff.

Reversed.

Judges WEBB and EAGLES concur.