STATE OF NORTH CAROLINA v. JONATHAN MAURICE LINTON

No. COA00-832

(Filed 21 August 2001)

**1. Confessions and Other Incriminating Statements— Miranda warnings—defendant not told he could leave—not in custody**

The trial court did not err in a prosecution for the first-degree sexual offense of a child and attempted first-degree rape of a child by admitting a statement which defendant contended he gave to police without Miranda warnings while he was in custody. Defendant went to the police station of his own volition and gave a statement without any promises being made; while he did not know that he was a suspect and contends that no one told him that he was free to go, he was not in custody and Miranda warnings were not required.

**2. Evidence— hearsay—out-of-court statements of witness refusing to testify—witness unavailable—order to testify required**

There was no plain error in a prosecution for the first-degree sexual offense of a child and the attempted first-degree rape of a child where the victim refused to testify, the court ruled that she was unavailable, and a number of witnesses were allowed to testify regarding her out-of-court statements. While the court exerted some pressure on the victim, she was never ordered to testify; an order from the trial court is an essential component in

a declaration of unavailability under N.C.G.S. § 8C-1, Rule 804(a)(2). However, the statements in question are very similar to others admitted in evidence and it cannot be said that the jury would probably have reached a different result without these statements.

**3. Constitutional Law— effective assistance of counsel—failure to object to hearsay—other similar statements admitted—no prejudice**

A defendant in a prosecution for the first-degree sexual offense of a child and first-degree attempted rape was not denied the effective assistance of counsel where his counsel did not object to hearsay testimony which was similar to statements given by defendant which were admitted.

Appeal by defendant from judgments entered 23 February 2000 by Judge David Q. LaBarre in Durham County Superior Court. Heard in the Court of Appeals 30 May 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Celia Grasty Lata, for the State.*

*The Law Offices of James Williams, Jr., P.A., by James D. Williams, Jr., for defendant-appellant.*

HUNTER, Judge.

Jonathan Linton (defendant) appeals from judgments entered upon the jury's verdicts finding him guilty of first degree sexual offense of a child and attempted first degree rape of a child. Defendant argues that the trial court erred by: (1) admitting into evidence his statement to the police; and (2) admitting testimony by various witnesses regarding out-of-court statements by the victim, "K." Defendant further argues that he received ineffective assistance of counsel in violation of his Sixth Amendment right to counsel. We find no prejudicial error.

The pertinent facts leading up to defendant's conviction follow. The record tends to show that defendant met K in an electronic (internet) chat room in June or July of 1999. The two gave each other fake names, defendant calling himself "Majestic," and/or "Maurice," and K identifying herself as "Toya." Over the next few weeks, having exchanged telephone numbers, the two "talked on the telephone several times a day . . . and during those conversations K[] told him that

she was sixteen years old and they made plans to go out together." Contrary to her assertions, K was only twelve.

On 7 August 1999, K and her girlfriend, Megan, went to the movies with defendant, after which defendant and K drove Megan home. Defendant and K then drove to the Southern High School parking lot where they engaged in sexual activity. In a written statement given to police three days later and testified to by Investigator Jacqueline Fountain, K stated that she and defendant

> were on the way to bring me home [and] he [defendant] pulled in[to the] . . . parking lot [and] he told me to get out of the car . . . . Then he told me to get in the back seat [and] I got in the back seat [and] he told me to unbutton my pants [and] I said no. Then he said I'll do it for you. Then I just gave up. He got in the back seat [and] took off his pants. Then he got on top of me [and] stuck his penis in my vagina.

K went on to describe defendant having oral sex with her and then continuing to have intercourse with her outside on the ground. She then stated, "[w]hile he was having sex with me I was trying to push him off but he kept hugging me." Then she stated that she remembered walking home. However, K did not tell anyone about the incident when she initially returned to her home, and her mother testified that when K came home from the movies, "there were no signs of physical or emotional trauma and that K[] said she had a good time."

The record reflects that, after taking K's statement, Investigator Fountain contacted defendant, informed him that she was investigating a sexual assault, and "asked him to come down to the police station" to talk. However, Investigator Fountain never informed defendant that he was her only suspect or that she fully intended to charge and arrest him at a later time. As defendant discussed the incident, Investigator Fountain reduced defendant's statement to writing and later had him sign it. In his statement, defendant said:

> On Saturday [the day in question] I parked in front of K[]'s house [and] she came out, we were going to the movies. I went to pick up a friend of hers, Megan, and then . . . we went to the movies . . . . After the movie, I asked her if she was ready to go home [and] she said no, so we rode around. . . . We then went to Southern High School, got out of the car [and] we kissed. I unbuttoned her pants. Then she asked me did I have any condoms, I

STATE v. LINTON

[145 N.C. App. 639 (2001)]

said no. Then she said, "don't come in me because I don't want to get pregnant.["] Then we started having sex, I could never get all the way in there. She got on top of me and tried. We were in the back seat . . . [and] went to the front of the car [and] tried to have sex on the hood. That didn't work, [and] then, last, we got on the street, on the ground. I wanted to stop because it wasn't working but she said no she didn't want me to stop. So I continued to try to have sex with her. . . . [When I drove her home, s]he wanted me to stop up the street from her house. . . . She left messages after that saying that she wanted to do it again [and] she wanted me to come over to her house to get her. . . . She called me [again] from . . . her friend[']s house. I asked her again if she was really sixteen, she said yes. I didn't know she was twelve until I called her at her house today and her father told me. . . . When she was lying on the ground I had oral sex with her because nothing else was working.

Shortly after giving his statement, defendant left the police station. He was arrested for the crimes against K five days later.

**[1]** In his brief, defendant sets forth six assignments of error, condensed into three arguments for our review. The remaining seven assignments of error appearing in the record but not raised in defendant's brief are deemed abandoned. N.C.R. App. P. 28(b)(5). Defendant first argues that the trial court erred by denying his motion to suppress his statement to the police, which, defendant argues, was given while defendant was in custody without having been read his *Miranda* rights. We are unconvinced.

" 'The scope of review on appeal of the denial of a defendant's motion to suppress is strictly limited to determining whether the trial court's findings of fact are supported by competent evidence, in which case they are binding on appeal, and in turn, whether those findings support the trial court's conclusions of law.' " *State v. Cabe*, 136 N.C. App. 510, 512, 524 S.E.2d 828, 830 (citation omitted), *appeal dismissed and disc. review denied*, 351 N.C. 475, 543 S.E.2d 496 (2000). As to the merits of defendant's argument, "the initial inquiry in determining whether *Miranda* warnings were required is whether an individual was 'in custody.' " *State v. Buchanan*, 353 N.C. 332, 337, 543 S.E.2d 823, 826 (2001). "[I]n determining whether a suspect was in custody, an appellate court must examine all the circumstances surrounding the interrogation; but the definitive inquiry is whether there was a formal arrest or a restraint on freedom of movement of

the degree associated with a formal arrest." *State v. Gaines*, 345 N.C. 647, 662, 483 S.E.2d 396, 405, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997). *Miranda* warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *Buchanan*, 353 N.C. at 337, 543 S.E.2d at 827 (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719 (1977)).

In applying the law to the facts of this case, we hold that defendant was not in custody when he chose, by his own volition, to go to the police station and give a statement without any promises being made to him, even if he did not know he was a suspect at the time. The record discloses no evidence of defendant being handcuffed or affirmatively placed in custody, neither is there evidence of any officer telling defendant he was not free to go. Defendant simply contends that at no time did anyone tell him he *was* free to go. That fact, standing alone, does not compel the conclusion that *Miranda* warnings should have been given. Without any evidence to the contrary, we hold that defendant was not in custody when he gave his statement to police and, thus, *Miranda* warnings were not required. His statement was admissible, and the trial court did not err in denying his motion to suppress.

[2] In his second argument, defendant contends that the trial court erred in admitting the testimony of a number of witnesses regarding out-of-court statements made by K. Specifically, defendant argues that the testimony of Elese Black, Nathaniel Keith, Cecelia Black, Barbara Sanders, Howard Alexander, Jacqueline Fountain, and Susan Rowe, regarding statements allegedly made by K, should not have been admitted by the trial court because K was not "unavailable as a witness" as required by N.C. Gen. Stat. § 8C-1, Rule 804 (1999) (Rule 804). Although we agree that K was not "unavailable as a witness," and that the admission of the testimony in question pursuant to Rule 804 was error, we hold that the error does not require reversal because it does not amount to plain error.

At the outset we note that defendant failed to object to the admission of the testimony when it was offered (which was before K refused to testify) and thereby failed to preserve the issue for review. However, an alleged error by the trial court not objected to at trial may be made the basis of an assignment of error where a defendant contends that the judicial action amounts to plain error, and defendant here does so contend. N.C.R. App. P. 10(c)(4). Thus, we review

the alleged error under the plain error standard of review although it was not preserved at trial. If we find that the admission of the testimony constitutes error, in order for the error to warrant reversal, this Court "must be convinced that absent the error the jury probably would have reached a different verdict." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986).

> "[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' . . . ."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). In addition, a defendant asserting plain error on appeal bears the burden of proving that the trial court committed plain error. *Walker*, 316 N.C. at 39, 340 S.E.2d at 83.

Turning to the merits of defendant's argument, the first question is whether the trial court's admission of the testimony at issue was, in fact, error. "Hearsay" is an out-of-court statement "offered in evidence to prove the truth of the matter asserted," N.C. Gen. Stat. § 8C-1, Rule 801(c) (1999), and is "not admissible except as provided by statute or by the North Carolina Rules of Evidence." *State v. Wilson*, 322 N.C. 117, 131-32, 367 S.E.2d 589, 598 (1988). Rule 804 provides various exceptions to the general prohibition against the admission of hearsay where the declarant is "unavailable as a witness." Subdivision (a) of Rule 804 enumerates the circumstances in which a witness may be deemed unavailable for purposes of admitting hearsay testimony under subdivision (b) of the rule:

(a) *Definition of unavailability.*—"Unavailability as a witness" includes situations in which the declarant:

. . . .

(2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so . . . .

Rule 804(a)(2). Subdivision (b)(5) of the rule, which provides a "catch all" exception for hearsay not falling under any other hearsay exception, states in pertinent part:

> (b) *Hearsay exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (5) Other Exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Rule 804(b)(5).

In the case at bar, K entered the courtroom to testify on behalf of the State, but once she arrived she refused to testify. The following discourse transpired during *voir dire* by the trial court:

> THE COURT: Do you understand that the Court could require you to testify?
>
> [K]: Yes.
>
> THE COURT: Are you currently unwilling to testify on behalf of the State?
>
> [K]: Yes.
>
> THE COURT: Do you refuse to testify at this point?
>
> [K]: Yes.

The trial court then excused K from testifying, declaring that she was "unavailable within the meaning of [Rule 804(a)(2)] in that she persists in refusing to testify concerning the subject matter of her statement despite some admonitions and directives of the Court."

Defendant argues that because the trial court "never ordered K[] to testify," it was improper to find her unavailable pursuant to Rule 804(a)(2), and therefore error to admit the statements pursuant to

Rule 804(b)(5). We have not found any cases from this State directly addressing the issue.[1] However, because Rule 804(a)(2) is identical to Rule 804(a)(2) in the Federal Rules of Evidence, *see* Fed. R. Evid. 804(a)(2), opinions from federal courts that have addressed this issue are instructive. *See, e.g., Stone v. Lynch, Sec. of Revenue*, 68 N.C. App. 441, 443, 315 S.E.2d 350, 352 (1984), *aff'd*, 312 N.C. 739, 325 S.E.2d 230 (1985).

In *United States v. Zappola*, 646 F.2d 48 (2d Cir. 1981), the Court held that the trial court erred in ruling that a witness, who refused to testify, was unavailable pursuant to Rule 804(a)(2) because "the district court did not order [the witness] to testify," but "[i]nstead . . . relied on [the witness's] assertion that he would refuse to testify even if ordered to by the court." *Id.* at 54. The Court stated:

> The procedure that should have been followed by the court when faced with [the witness's] refusal to testify was (1) the issuance of an order, outside the presence of the jury, directing him to testify and (2) a warning that continued refusal to testify despite the court's order would be punishable by contempt.

*Id.* In a similar case, *United States v. Oliver*, 626 F.2d 254 (2d Cir. 1980), the same Court held that an order from the trial court is an essential component in a declaration of unavailability under Rule 804(a)(2). In *Oliver*, the trial court had put pressure on the witness to testify; "[h]owever, the court never *ordered* him to testify, which is an essential requisite to the invocation of Rule 804(a)(2)." *Id.* at 261. The Court also noted that "[i]t is always possible that a recalcitrant witness who does not respond to judicial pressure will testify when ordered to do so." *Id.*

Here, during *voir dire*, the trial court asked K whether she intended to refuse to testify although she could be required to do so by the court. K responded affirmatively, indicating that she refused to testify. While the court exerted some pressure on K to testify, the court never ordered K to testify and never warned her of the possibility of punishment for her continued refusal. We believe it is possible that K would have testified had she been ordered to do so by the court. We agree with the rule set forth in *Zapolla* and *Oliver* that an

---

1. The State's reliance upon *State v. Chandler*, 324 N.C. 172, 376 S.E.2d 728 (1989), is misplaced because the trial court in that case deemed the witness unavailable under Rule 804(a)(4), which allows a finding of unavailability when the declarant "[i]s unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity." Rule 804(a)(4).

**STATE v. LINTON**

[145 N.C. App. 639 (2001)]

order from the trial court is an essential component in a declaration of unavailability under Rule 804(a)(2). Therefore, we conclude that the trial court erred in declaring K unavailable without first giving the required order to testify.

The next question is whether this error warrants reversal. The record shows that the statements in question are extremely similar (in terms of providing evidence of the offenses charged) to the statement that defendant gave to the police, and the statement that K gave to the police, both of which were admitted in evidence and considered by the jury. For this reason, we cannot say that, absent the admission of the statements in question, the jury would probably have reached a different verdict. Furthermore, we agree with the trial court that the fact that the statements in question were made shortly after the incident indicates a significant degree of reliability as to the accuracy of these statements. Thus, we also cannot say that admission of the statements resulted in a miscarriage of justice. In sum, although the trial court erred in deeming K unavailable without ordering her to testify, we conclude that defendant has failed to carry his burden under a plain error analysis and that the error does not warrant reversal. This assignment of error is overruled.

**[3]** In defendant's final argument, he contends that he received ineffective assistance of counsel in violation of his Sixth Amendment right to counsel. "Defendant argues that he was denied effective assistance of counsel when, during the testimony of Elese Black, Cecelia Black, Nathan Keith, Rosalyn Keith, Investigator Jacqueline Fountain and Corporal Howard Alexander, defense counsel failed to object to their hearsay testimony about what K[] said to them" regarding the incident in question. Defendant further contends that "[e]ven the [trial] court recognized the flawed proceedings," because when defense counsel finally did object, the trial court stated:

As far as the defendant's general objection to the testimony of the alleged victim as given through other witnesses, the defendant having failed to object to any of that evidence offered through other witnesses at the time offered by the State, the Court overrules that objection.

We are unpersuaded by defendant's argument.

It is well-established that

[a] defendant's right to counsel includes the right to the effective assistance of counsel. When a defendant attacks his conviction

on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness. In order to meet this burden defendant must satisfy a two part test.

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable.*"

. . . .

The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings.

. . . .

Thus, if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient.

*State v. Braswell*, 312 N.C. 553, 561-63, 324 S.E.2d 241, 247-49 (1985) (citations omitted).

Here, our examination of the record convinces us that there is no reasonable probability that defense counsel's failure to object to the admission of the testimony in question affected the outcome of the trial. This is because, as discussed above, the statements in question are extremely similar (in terms of providing evidence of the offenses charged) to the statement that defendant gave to the police, and the statement that K gave to the police, both of which were admitted in evidence and considered by the jury. As a result, we believe the evidence of defendant's guilt was more than substantial to prove defendant committed the crimes with which he was charged, even without the hearsay testimony being allowed. Looking to the totality of the circumstances in the present case, we hold that defend-

ant has failed to show that any errors by defense counsel prejudiced defendant.

No error.

Judges MARTIN and HUDSON concur.