UNITED STATES of America, Plaintiff-Appellee,

v.

George ZAPPOLA and Robert Melli, Defendants-Appellants.

Nos. 515, 516, Dockets 80–1349, 80–1351.

United States Court of Appeals, Second Circuit.

Argued Dec. 3, 1980.

Decided April 15, 1981.

Paul B. Bergman, New York City (Michael L. Santangelo, New York City, of counsel), for defendant-appellant George Zappola.

Ronald P. Fischetti, New York City (Anne C. Feigus, New York City, of counsel), for defendant-appellant Robert Melli.

John S. Martin, Jr., U. S. Atty., S. D. New York, New York City (Daniel H. Bookin, and Mary Jo White, Asst. U. S. Attys., New York City, of counsel), for the United States of America.

Before OAKES and MESKILL, Circuit Judges, and WERKER, District Judge.*

* Of the United States District Court for the Southern District of New York, sitting by designation.

WERKER, District Judge:

George Zappola and Robert Melli appeal from judgments of the United States District Court for the Southern District of New York (Leonard B. Sand, Judge), convicting each of them following a jury trial of conspiring and attempting to extort money in violation of the Hobbs Act. 18 U.S.C. § 1951(a) and 18 U.S.C. § 2. The principal issue on appeal is whether the district court erred in quashing a subpoena of one of the victims of the attempted extortion on the ground that he was entitled to invoke the fifth amendment privilege against self-incrimination. Because we conclude that the district court's findings on this issue were error, and because we are unable to conclude that this error did not affect the jury's verdict, we reverse the convictions and remand for a new trial.

### FACTS

George Zappola and Robert Melli were the owners of M & R Repair, a company engaged in the business of repairing cargo containers. The evidence at trial tended to prove that Zappola and Melli through threats, fear and violence attempted to extort $40,000 from William Ross and John Marano, the owners of World Trade Transport, Inc., a New Jersey company involved in transporting cargo containers. Ross testified that the four men met at M & R Repair on June 6, 1977 at the request of George Zappola. He further testified that at this meeting, Zappola, with the approval of Melli, accused Ross and Marano of diverting about $38,000 worth of business from M & R. Although Marano tried to explain that World Trade was not responsible for M & R's loss of business, Zappola refused to believe him. Ross stated that during the meeting, Zappola brandished a loaded gun, fired a shot into the floor just beyond where Marano was sitting and hit Marano twice across the face, causing him to bleed. Ross also testified that about one week later, he and Marano met with Melli at a restaurant in New Jersey. At this meeting, Melli appeared "quite reasonable" and wanted to obtain World Trade's side of

the story about the diversion of M & R's business. Ross further testified about a subsequent meeting of all of the four men at a restaurant in New York City at which time Zappola and Melli again accused Ross and Marano of diverting their business and demanded $40,000 to compensate for their losses. Ross stated that the day after this meeting, Marano delivered $1,000 to an individual by the name of Montella in an attempt to settle their dispute with M & R.

Marano who had been cooperating with the FBI since April of 1977, had agreed with the FBI on June 7, 1977 to tape subsequent meetings with Zappola and Melli if circumstances permitted. At trial, the government introduced five conversations taped by Marano while acting in his undercover capacity. The first was a telephone conversation between Marano and Melli which was recorded on June 22, 1977. The second was a conversation between Marano and Melli which took place in the restaurant of a Holiday Inn in New Jersey on June 22, 1977. The third was a telephone conversation between Marano and Zappola which was recorded on June 23, 1977. The fourth and fifth were telephone conversations between Marano and Zappola which were recorded on June 24, 1977.

Because Judge Sand ruled that Marano was entitled to invoke the fifth amendment privilege against self-incrimination as a complete shield to testifying in the case and further found that Marano would refuse to testify even if ordered to by the court, the government's evidence concerning the attempted extortion was presented through the testimony of Ross, several FBI agents, and the taped conversations between Marano and each of the defendants. The trial court, however, did not receive Marano's statements on the tapes or as related in Ross' testimony for the truth of their content. Rather, they were admitted primarily to demonstrate the context of statements made by other parties to the conversations.

The controversy concerning the unavailability of John Marano developed as follows. Initially, the government sought to have Marano testify at trial and served him with

a subpoena to that end. Marano's attorney moved to quash this subpoena on the ground that his client had invoked the fifth amendment privilege against self-incrimination and would refuse to testify even if granted immunity. After an *in camera* hearing at which only Marano's counsel and the prosecutor were present, Judge Sand granted the application to quash. At the time of trial, an indictment in an unrelated case naming Marano as the sole defendant was pending.

Subsequently, Judge Sand ruled that Marano was unavailable as a witness under Fed.R.Evid. 804(a)(1) and (2), because he possessed a valid fifth amendment privilege and because his counsel had represented that he would refuse to testify even if ordered to by the court. The court made its ruling without summoning Marano to court for the purpose of inquiring into his claimed privilege and refusal to testify because of a security risk involved in bringing Marano to the courthouse.[1]

During the proceedings concerning the government's subpoena of Marano, defendants had revealed their desire to also subpoena Marano as a witness. They later effected service on Marano by serving his attorney who had been authorized to accept service on his behalf. Marano's attorney nevertheless then moved to quash the subpoena on the same grounds as those raised in response to the government's subpoena of Marano.[2]

At this juncture, the court decided to hold an *in camera* hearing in order to inquire of Marano the basis for his asserted privilege. Marano appeared at this hearing and, in a single response to all questions proposed by counsel for defendant Melli, stated that he would invoke his fifth amendment privilege.[3] When asked if his invocation of the privilege was based upon the fact that he presently was under indictment, Marano replied that he feared for his personal safety.

On the basis of Marano's responses, Judge Sand found that if Marano were called as a witness, "he would invoke the fifth amendment as a privilege against self-incrimination and that a valid basis would exist for such invocation." Judge Sand further found that Marano "has indicated that he would not testify even if ordered to do so." The court therefore granted the motion to quash.

On appeal, appellants assert that the district court erred in ruling that Marano was entitled to invoke his fifth amendment privilege as to conversations and meetings that occurred while he was acting in an undercover capacity for the government. They further contend that the district court erred when it permitted the government to introduce at trial many of Marano's statements

---

1. The security risk involved in bringing Marano to the courthouse stemmed from an incident in which Marano was the subject of a barrage of rifle fire.

2. Marano's attorney stated that his client's reasons for seeking to quash the subpoena were that he would invoke his fifth amendment privilege against self-incrimination and even if ordered to testify by the court, would refuse to do so because of fear for his personal safety. According to his attorney, "Marano's fear is what prompts him to invoke the fifth."

3. The questions proposed by counsel for defendant Melli were:
   (1) "whether or not he attended a meeting at a trailer located at M & R's premises on or about June 6, 1977, and at that time whether he met a Robert Melli;" and
   (2) whether "during that occasion did Robert Melli search him for a wire on instructions from George Zappola;" and

(3) "what, if anything, Mr. Melli did on that particular occasion—June 6, 1977;" and
(4) whether or not he met Robert Melli at the Holiday Inn on June 22, 1977, had a conversation with Mr. Melli on that date and the extent of that conversation; and
(5) "whether there came a point in time, prior to the June meeting, on or about May 4, 1977 when he was interviewed by agents of the FBI and, if he was, at that particular time did [he] tell agents of the FBI, in words or in substance, that ... Zappola was submitting maintenance repair costs which were too costly and that his firm, World Trade Transportation, would be able to save Japan Lines a quarter of a million dollars in the long run; in other words, did he have conversations with Japan Lines about the business that M & R was doing that he, as an officer of World Trade Transport, would be able to do cheaper."

for the purpose of placing statements of the defendants in context or to show what was said or to demonstrate Ross's state of mind. Although Judge Sand did not receive these statements for the truth of their content, defendants assert that the effect of the admission of these statements was to place inadmissible and highly prejudicial testimony before a jury that would be unable to sever its impermissible from its permissible use. According to appellants, the prejudicial effect of these statements was not overcome by Judge Sand's cautionary instructions to the jury that it could not use Marano's statements for the truth of their content. They further assert that in view of the pervasive use of Marano's statements, the trial court should have permitted defendants to impeach Marano's credibility.[4]

**4.** The original indictment charging Zappola, Melli and a third person, Michael Clemente with extortion, was superseded at the conclusion of the trial against Clemente by one naming only Zappola and Melli. This indictment charged the appellants with having attempted to extort money from World Trade. Defendant Zappola contends that the superseding indictment was improperly obtained from the grand jury and therefore should be dismissed. This contention is without merit. We do not find error in the manner in which the superseding indictment was obtained. *See United States v. Schlesinger*, 598 F.2d 722 (2d Cir.), *cert. denied*, 444 U.S. 880, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979).

**5.** The concern that appellants' arguments as to the extent of Marano's fifth amendment privilege were not raised below is unfounded. Defense counsel continuously asserted objections to the court's rulings that Marano was unavailable under Fed.R.Civ.P. 804(a)(2) and had a valid fifth amendment privilege as to all matters for which he might be called upon to testify. Defendant Melli's counsel objected to the court's decision finding Marano unavailable based on his assertion that he would refuse to testify even if ordered to by the court. Counsel argued that the Court first had to order Marano to testify before it could make such a finding. Appendix at 105.

After the *in camera* hearing at which the Court inquired into Marano's asserted privilege and prior to the Court's ruling, counsel for defendant Melli stated that he did not understand how Marano could have a fifth amendment privilege with respect to most of the questions asked by counsel at the hearing. Appellants' Joint Appendix at 564. Furthermore,

## DISCUSSION

The central issues on this appeal are (1) whether Judge Sand correctly ruled that Marano possessed a valid privilege against self-incrimination under the fifth amendment which rendered him unavailable as a witness under Fed.R.Evid. 804(a)(1), and (2) whether Judge Sand correctly ruled that Marano's statement that he would refuse to testify even if ordered to by the court rendered him unavailable under Fed.R.Evid. 804(a)(2).[5]

## FIFTH AMENDMENT PRIVILEGE

The fifth amendment to the United States Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself."

■ This privilege against self-incrimination extends to answers that in them-

counsel also raised the issue of whether a witness could refuse to testify based on fear if he did not otherwise have a valid fifth amendment claim of privilege. Appendix at 554-55. In addition, Marano's attorney Greelish stated: "there are certain questions that perhaps put to Mr. Marano I think we would concede that there are ones in which an invocation of the fifth would not be valid. There are others, I very much feel, would be valid." Appendix at 550. While defense counsel may not have articulated the basis for their objection to Judge Sand's rulings with respect to Marano as clearly as they might have, it is clear that they objected on the grounds presently asserted before this court.

*United States v. Knuckles*, 581 F.2d 305, 310 (2d Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978), is distinguishable from the case at bar. *Knuckles* involved a situation in which the defendants actually took a position contradictory to that asserted before the trial court. The Second Circuit stated that it could not "countenance such a flagrant shifting of position on appeal." 581 F.2d at 310. In *United States v. Schwartz*, 535 F.2d 160, 163 (2d Cir. 1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581 (1977), the court noted that appellants' failure to raise certain objections in a pre-trial suppression motion constituted a waiver of those objections. The *Schwartz* court nevertheless reviewed the merits of appellant's claims. *Id.* at 163. It is suggested that the appellants' contentions in the case at bar do not constitute a "flagrant shifting of position" and are more akin to the *Schwartz* case in which the Court in fact reviewed appellant's contentions.

selves would support a federal criminal conviction as well as those that would "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed.2d 1118 (1951). Nevertheless, the claimant of the privilege must be "confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination." *United States v. Apfelbaum*, 445 U.S. 115, 128, 100 S.Ct. 948, 956, 63 L.Ed.2d 250 (1980). Ultimately, it is for the trial judge to determine whether "a responsive answer to the question [posed] or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed.2d 1118 (1951).

■ In this case, there is no doubt that Marano had a legitimate fear of prosecution with respect to his activities on the waterfront. Indeed, at the time that this case was tried, he already was under indictment for certain of those activities. The pivotal question, however, is whether Marano could have a legitimate fear of prosecution as to questions of limited scope concerning matters in which he had acted in an undercover capacity for the government. For the reasons that follow, we conclude that he could not.

In the past, this Circuit has recognized the principle that a government informant is protected from criminal prosecution for conduct engaged in during the course of that agency. *See United States v. Anglada*, 524 F.2d 296, 300 (2d Cir. 1975). *See also*

*United States v. Eisenberg*, 596 F.2d 522, 527 (2d Cir.), *cert. denied*, 444 U.S. 843, 100 S.Ct. 85, 62 L.Ed.2d 56 (1979); *United States v. Rosenblatt*, 554 F.2d 36 (2d Cir. 1977). It is our view that a witness who is protected in this manner cannot reasonably fear prosecution with respect to his activities as a government agent. Thus, he cannot legitimately invoke the privilege against self-incrimination as to questions of limited scope dealing solely with those activities. We note that this approach to determining the extent of a government informant's fifth amendment privilege previously has been suggested to be proper even where the witness is, at the time of trial, under indictment for conduct that is similar but unrelated to his activity as a government agent. *See United States v. Anglada*, 524 F.2d at 300.

■ In this case, it is clear that Marano could not legitimately fear prosecution with respect to certain of the circumscribed questions posed by counsel for defendant Melli and that his invocation of the privilege actually was based improperly on fear for his personal safety.[6] *See Piemonte v. United States*, 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961). Yet, the district court simply accepted Marano's blanket assertion of the fifth amendment privilege in response to all questions asked of him and did not undertake a particularized inquiry to determine whether the assertion was founded on a reasonable fear of prosecution as to each of the posed questions. This was error. Although Marano was under indictment at the time of trial and may have been under further investigations for his activities on the waterfront, we find that

---

6. At the *in camera* hearing, Marano repeatedly responded to Judge Sand's questions about his reason for invoking the fifth amendment with statements that he did not want to testify because he feared for his life. After Judge Sand allowed counsel for defendant Melli to pose certain questions to Marano and permitted Marano to confer with his attorney about his responses to those questions, the following colloquy ensued:

THE COURT: Mr. Marano, if the questions that Mr. Fischetti has just asked before were asked of you at trial, would you answer those questions?

THE WITNESS: I would invoke the Fifth Amendment.

THE COURT: And why would you do that, sir?

THE WITNESS: Because it might tend to incriminate me.

THE COURT: Is the fact that you are presently under indictment a relevant consideration in that regard?

THE WITNESS: Your Honor, I am deathly afraid of [sic] my own life.

more rigorous scrutiny of why his response to certain questions would be incriminating was not precluded. While we recognize that in some situations, an explanation of the reason that a certain answer is incriminating may result in injurious disclosure, it nevertheless appears that where a witness is protected from prosecution on a particular matter, a trial judge should undertake a more focused inquiry into the basis for invocation of the privilege as to each question posed to him.

Thus, Marano should have been required to respond to some carefully phrased, limited questions by defense counsel concerning the time and place of the meetings, the persons with whom he met, that conversations were tape recorded, what the substance of the conversations was, and who said what. Responses to questions concerning the purpose of the meetings or a summary of prior circumstances may not be required because such information may furnish a link in the chain of evidence needed to prosecute Marano for criminal conduct.

Both the Fifth and Sixth Circuits have adopted this approach to the extent of a fifth amendment privilege available to government agents. In *United States v. Damiano*, 579 F.2d 1001 (6th Cir. 1978), the Sixth Circuit found that while Damiano could refuse to answer certain questions posed to him because they might lead to further prosecutions against him, he could not refuse to testify on fifth amendment grounds to certain limited questions concerning matters in which he had cooperated with federal authorities. The Court's rationale was that a witness could not legitimately fear prosecution by state or federal authorities based on his answers to questions of limited scope because the witness could not be found to have possessed the requisite *mens rea* where he acted in an undercover capacity for federal authorities. *Id.* at 1002–03. Similarly, in *United States v. Melchor Moreno*, 536 F.2d 1042 (5th Cir. 1976), the Fifth Circuit stated:

[a] witness may not withhold all of the evidence demanded of him merely because some of it is protected from disclosure by the Fifth Amendment.... A court must make a particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded.

*Id.* at 1049. Conceding that the witness may have been exposed to a risk of prosecution from questions concerning circumstances tangentially related to that prosecution, the district court nevertheless found that it would be difficult to show that he would be subject to prosecution as to the heroin deal at issue since "he was acting in cooperation with DEA agents at least part of the time." *Id.*

█ Our conclusion that the district court erred in ruling that Marano possessed a valid fifth amendment privilege as to all areas of questioning renders consideration of the other issues raised by appellants unnecessary. However, because we find plain error in the district court's ruling that Marano was unavailable to testify under Fed.R. Evid. 804(a)(2) we will address this issue as well.

Fed.R.Evid. 804(a)(2) provides:

" 'Unavailability as a witness' includes situations in which the declarant persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so."

█ In *United States v. Oliver*, 626 F.2d 254 (2d Cir. 1980), this circuit held that an order from the court is an essential component in a declaration of unavailability under Rule 804(a)(2). *Id.* at 261. It is clear that in this case, the district court did not order Marano to testify. Instead, the district court relied on his assertion that he would refuse to testify even if ordered to by the court. The procedure that should have been followed by the court when faced with Marano's refusal to testify was (1) the issuance of an order, outside the presence of the jury, directing him to testify and (2) a warning that continued refusal to testify despite the court's order would be punishable by contempt.

Furthermore, we fail to understand the court's rulings with respect to Marano as an

unavailable witness in the first instance. Rule 804 was designed to allow the admission of hearsay statements for the truth of their content when a witness is unavailable. The Court, however, repeatedly stated that it was not receiving Marano's statements for the truth of their content. In our view, if the court did not receive Marano's statements for the truth of their content, then it was unnecessary and premature for the court to have determined whether Marano was unavailable under either 804(a)(1) or (2). In addition, the language of § 804(a)(2) which is phrased in terms of a witness refusing to testify as to his statements seems to be inapplicable to the situation facing Judge Sand. In all likelihood, Marano would have been asked by defense counsel to testify to whether he attended one or two meetings, where they occurred, and what statements were made *to him*. This would not have involved testimony as to Marano's statements and there is no indication that Marano would have refused to testify as to his own statements.

Finally, we suggest that if the trial court is faced with Marano's unavailability on retrial, a closer look should be taken to determine whether the admission of Marano's statements for limited evidentiary purposes actually resulted in unfair prejudice to the defendants due to the probability of misuse by the triers of fact as evidence of the truth of the matters asserted. *Compare United States v. Murray*, 618 F.2d 892, 900 (2d Cir. 1980) and *United States v. Fuentes*, 563 F.2d 527 (2d Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977) with *United States v. Check*, 582 F.2d 668 (2d Cir. 1978) and *United States v. Kaplan*, 510 F.2d 606 (2d Cir. 1974).

We are unable to conclude that the effect of these hearsay statements did not unduly prejudice the defendants in the minds of the jury and affect its verdict. Because of the ambiguities in the lower court's determination of the foregoing issue and the error involved in its determination of the fifth amendment issue we reverse and remand for a new trial.