**UNITED STATES of America, Appellee,**

v.

**Earl BOWE, Appellant.**

**No. 486, Docket 82–1203.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1982.

Decided Jan. 5, 1983.

John N. Villios, Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Vivian Shevitz, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Phylis Skloot Bamberger, The Legal Aid Society, Federal Defender Services Unit, New York City, for appellant.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge and BONSAL,* District Judge.

FEINBERG, Chief Judge:

Appellant Earl Bowe appeals from a judgment of conviction entered in June 1982, in the United States District Court for the Eastern District of New York, after a jury trial before Henry Bramwell, J., for possession of narcotics in violation of 21 U.S.C. § 844(a). Judge Bramwell sentenced appellant to one year in prison, with six months suspended, fined him $5,000, and placed him on probation for five years. Appellant has apparently completed his prison term. He contends before us that the judge erroneously deprived him of his right to present critical testimony at a hearing on his motion to suppress key evidence obtained as a result of a search, and that the judge erred in denying the motion because the warrant was obtained by means of deliberate falsehood or in reckless disregard

* Honorable Dudley B. Bonsal, Senior United States District Judge for the Southern District of New York, sitting by designation.

of the truth. See *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). For reasons set forth below, we remand to the district court for further consideration of the motion to suppress, in accordance with this opinion.

## I. Facts

In April 1982, appellant went to trial on an indictment charging him with possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Just prior to trial, the judge held the hearing already referred to on appellant's motion to suppress physical evidence and incriminating statements obtained as a result of a search of appellant's apartment two months earlier pursuant to a search warrant. The relevant facts are as follows:

### A. The Ehnes Affidavit

The affidavit that is the primary object of appellant's attack was prepared by Deputy United States Marshal Ronald Ehnes. In his affidavit, Ehnes swore that: Pursuant to a warrant issued by the United States Parole Commission, he and two other officers (later identified as Inspector Robert Leschorn and Deputy United States Marshal Michael Hollander) went to the last known residence of fugitive William Bullion, 91 Ocean Parkway, Apartment 3–B, Brooklyn, New York. A female (later identified as Gloria Jones) answered the door of apartment 3–B and initially refused to let the officers in; she stated that Bullion was in apartment 1–A. When the officers finally were admitted, the officers did not find Bullion but did discover small quantities of narcotics and narcotics paraphernalia. The affidavit further stated that Jones told the marshals that Bullion had left the evening before and although she expected him back shortly, she claimed ignorance of where Bullion was. Only after Jones's young child left the room, did Jones state "in a whisper, to look for [Bullion] in apartment 1–A, which she then identified as the residence of one 'Bow'," appellant's friend and partner in narcotics transactions.

The affidavit further stated: At the request of Ehnes, Jones led the marshals to apartment 1–A, reiterating that this was where Bullion could be found. A woman in the apartment refused to open the door, stating that she did not know either Bullion or "Bow". Shortly thereafter, the woman ran from the apartment locking the door behind her. The woman identified herself as Mrs. Williams (and was later identified as Francesca Ferrera). Based on information obtained from a telephone conversation with Inspector Leschorn outside of apartment 1–A, Ehnes swore that another individual remained inside the apartment.

### B. The Search

Upon the facts presented in the Ehnes affidavit, Magistrate A. Simon Chrein issued a warrant to search apartment 1–A. Thereafter, the marshals were able to gain entrance to apartment 1–A only by forcing the door open. Once inside, they discovered appellant Bowe in the bedroom. The marshals made a cursory search of the premises for Bullion. Although he was not there, the marshals found in plain view narcotics, numerous pieces of narcotics paraphernalia and a box of bullets. At this point, Deputy Hollander left to obtain a second warrant for a broader search of the apartment. While Hollander was gone and after appellant had received *Miranda* warnings, appellant made several spontaneous inculpatory remarks.[1] After the second warrant was issued, the deputies searched apartment 1–A more thoroughly and uncovered additional evidence.

### C. The Suppression Hearing: The "Testimony" of Gloria Jones

At the suppression hearing, Inspector Leschorn testified for the government, as did Deputies Hollander and Mary Balderac-ci. Francesca Ferrera testified for appellant, although for the bulk of her testimony, she was also made a government witness. During the hearing, appellant's counsel was able to bring out a number of apparent inconsistencies between the testimony and the affidavits made two months before in support of the warrants.[2]

Of particular concern on this appeal is the testimony of Gloria Jones—the individual whom the marshals first encountered when they first went to apartment 3–B. Before proceeding with his cross-examination of a government witness, defense counsel stated that he had subpoenaed Jones to testify and that Jones had indicated that she did not want to testify without counsel. Defense counsel suggested that while he was not making an application on behalf of Jones, counsel might be appointed for her. Judge Bramwell questioned his authority to appoint counsel for Jones under the Criminal Justice Act, 18 U.S.C. § 3006A (West Supp. 1982), since she was not a defendant. While acknowledging appellant's right to subpoena Jones, the judge indicated that he would warn Jones of her right against self-incrimination.

Thus, when Jones took the stand, the judge stated that if Jones testified, she was "liable to be involved in the matter involving William Bullion as well as this matter . . ." and the judge suggested that Jones not testify before speaking to an attorney. Jones then said that she did want to consult with an attorney before testifying and further indicated that she did "[n]ot really" wish to testify at all. Upon questioning from the judge, Jones stated that she did not wish to take the fifth amendment but "would not like to testify." The judge then indicated he would not force her to testify in the absence of an attorney. Following

---

1. E.g., one of the admissions attributed to Bowe was his response to Inspector Leschorn's query as to who "Bowe was". Appellant responded:

   I am Big Bowe; that I sell only the best product, that I do not sell milk sugar; that I have people throughout the United States; that I should have shot you through the door with the gun that shoots through the door and through the vests.

2. E.g., whether Jones told the marshals that Bullion was in 1–A; whether Jones led the marshals to 1–A or stayed behind with Deputy Hollander; whether Jones's son was present with Jones and the deputies during their entire conversation or whether the child left and provided Jones with an opportunity to tell the deputies where Bullion was; and whether Jones whispered her information to the marshals and where such whispering took place.

objection by defense counsel, Jones was sworn in and again expressed a desire not to testify without counsel. Judge Bramwell then made a finding that Jones was asserting her fifth amendment privilege and excused her from the courtroom. Portions of the relevant colloquies are reproduced in the margin.[3]

3. When Gloria Jones appeared, the following occurred:

THE COURT: What is your name?

MS. JONES: Gloria Jones.

THE COURT: I understand you've been subpoenaed to come here.

MS. JONES: Yes.

THE COURT: There's been certain testimony here by the agents, those involved in this proceeding. Based on that testimony, it would be my opinion that if you testify in this proceeding, you are liable to be involved in the matter involving William Bullion as well as this matter. It would be my suggestion that you don't testify unless you speak to an attorney. You could involve yourself unknowingly and somebody might otherwise involve you in this matter or the other matter if you testify. You understand?

MS. JONES: Yes.

THE COURT: What do you want to do?

MS. JONES: I would like to have a lawyer if I have to testify.

THE COURT: Do you want to testify in this proceeding?

MS. JONES: Not really.

THE COURT: Mr. Nooter?

MR. NOOTER: I would move she be compelled to testify. If she were to take the witness stand and take the Fifth Amendment, I guess there's nothing we can do about that, but I think she should only do that under advice of a lawyer. She can take the Fifth Amendment.

THE COURT: Do you want to at this time take the Fifth Amendment and refuse to testify?

MS. JONES: I don't, your Honor.

THE COURT: Do you want to refuse to testify at this point?

MS. JONES: I don't know what that means.

THE COURT: Do you want to refuse not to testify? Do you want to come up and testify?

MS. JONES: I would like not to testify.

THE COURT: I'm not going to require it.

MR. NOOTER: I object to this proceeding. I have a right to call witnesses.

THE COURT: I am not going to require her if she doesn't want to, unless she has an attorney.

MR. NOOTER: Then she should have an attorney. I have no objection, I brought that up before. She certainly should be a witness.

THE COURT: Put her on the stand, swear her in. If you want to refuse, you just refuse. If you want to testify, you testify. Please come up. You understand what I've told you? You understand that you could get involved in this thing if you testify; do you understand that?

MS. JONES: Yes.

THE COURT: Swear her in.

GLORIA JONES called as a witness, having been first duly sworn by the Clerk of the Court, testified as follows:

THE CLERK: Full name.

THE WITNESS: Gloria Jones.

THE COURT: Do you want to tell us what it is you would like to do?

THE WITNESS: I would not like to testify because I don't want to involve myself in any criminal activity.

THE COURT: Anything you want to ask?

MR. NOOTER: I still object to this procedure. It seems to me—

THE COURT: I am not going to require her. If you want to get an attorney and come back, speak to him, come back and testify, you can do that. Other than that, I'm not requiring you to testify.

MR. NOOTER: Judge, she isn't a friendly witness. I subpoenaed her. She's not someone who is a friend of my client.

THE COURT: You're excused. Go home.

MR. NOOTER: She's a necessary witness. The record should be clear—

THE COURT: The record shows everything.

MR. NOOTER: I totally object to this procedure.

MR. VILLIOS: Excuse me, your Honor, to clarify something in our minds, sir, has your Honor made a finding this woman is asserting her Fifth Amendment privilege?

THE COURT: That's the Court's position. The woman is refusing to testify.

Do you in any way want to testify?

THE WITNESS: No.

THE COURT: Do you feel that you should speak to an attorney before you testify?

THE WITNESS: If I have to testify.

THE COURT: If you're required to testify you want to speak to an attorney?

THE WITNESS: Yes.

THE COURT: The Court finds this woman is asserting her Fifth Amendment privilege. She's not required to testify. You're excused.

MR. NOOTER: Your Honor, I still object. The witness' willingness is not the issue. It's simply whether she's appropriately applying the Fifth Amendment.

THE COURT: I also find from the evidence that's before this Court that if this woman testifies there could be testimony which she may make which may involve her in this crime or other crimes and under those circumstances I will not require her to testify.

Defense counsel continued to object to the procedure, arguing that Jones' willingness to testify was "not the issue." Furthermore, counsel stated that he could ask questions that would not implicate Jones in other crimes. Counsel noted that Jones was not a friendly witness and that her testimony was "necessary" to appellant's case. Thus, counsel stated that Jones would testify "that she did not at any time tell the marshals that her husband, William Bullion, can be found in apartment 1–A, that they had asked her about 1–A but she did not know where her husband was, [and that she] did not tell them that he was in 1–A." From this, of course, defense counsel argues to us that the contrary statements in the Ehnes affidavit were either deliberately false or made in reckless disregard of the truth.

At the close of the hearing, Judge Bramwell decided the motion in open court, holding that the search warrants had been supported by probable cause, that Jones had provided what turned out to be reliable and accurate information and had given the marshals no reason to believe her information to be inaccurate, and that appellant had failed to show that the marshals had knowingly presented inaccurate information to the magistrate. Accordingly, the judge denied the motion to suppress.

MR. NOOTER: I believe there are things that I would ask her that would not necessarily involve her in other crimes.

THE COURT: The Government would have the right to explore like you've been doing this morning. That's the right of cross-examination. Under those circumstances, things might be brought out which would involve this woman in this crime or other crimes and the Court finds that she's asserting her privileges and the Court is not requiring this woman to testify.

MR. NOOTER: I restate my objection to that procedure?

THE COURT: Very well.

(Witness leaves courtroom.)

MR. NOOTER: Before Mr. Hollander is sworn, I want to make the record clear on point why Ms. Jones is such an important witness to the defense. I know you've made the ruling, but I would like to point it out to you and ask you to reconsider the ruling.

## D. The Trial

Following a short trial, appellant was convicted by a jury of the lesser included misdemeanor offense of possession of heroin. In this court, appellant contends that the district judge erred in denying the motion to suppress and that the judge's failure to require Jones to testify at the suppression hearing violated appellant's fifth and sixth amendment rights under the United States Constitution.

## II. Discussion

In pressing this appeal, appellant relies principally on *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). Under that decision, evidence obtained pursuant to a search warrant must be suppressed if a false statement either knowingly and intentionally or with reckless disregard for the truth was included in the affidavit requesting the warrant and the statement was necessary to establish probable cause. See also *United States v. Barnes,* 604 F.2d 121, 152–53 (2d Cir.1979), cert. denied, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). The government contends that appellant may not argue the point because he did not raise it below. It is true that defense counsel did not spell out his argument on this point with clarity at the start of the suppression hearing. However, during the course of the proceeding it did become apparent that appellant claimed that portions of the Ehnes

Ms. Jones has told us through an investigator that she did not at any time tell the Marshals that her husband, William Bullion, can be found in apartment 1–A, that they had asked her about 1–A, but she said she did not know where her husband was, did not tell them that he was in 1–A. There are other discrepancies, but that was the principal point.

THE COURT: Mr. Nooter, based on the testimony that has been before this Court, Ms. Jones could be either involved in something connected with the proceeding on trial or with something connected with William Bullion as a fugitive. Either of these two situations might be to her detriment and they might, if she testified, this might unknowingly or unwittingly involve her in either this offense or something connected with the other matter. These are all of a criminal nature. Under those circumstances I will not require her to testify.

affidavit[4] constituted either deliberate falsehood or reckless disregard of the truth. Thus, defense counsel stated appellant's position to be that "many of the facts stated in the affidavit are not true or accurate," and announced his intention to call a witness to show that certain statements in the affidavit were untrue. Counsel elaborated on this when he proffered what Jones would have said if compelled to testify, and counsel clearly indicated the principal portions of the affidavit he would attack through Jones's testimony. Also, in clarifying his position, counsel stated that he did not "want the court to feel that [defense counsel] was not alleging there was bad faith in the preparation of the affidavit . . . [w]hether actual perjury it was reckless disregard of the truth." Finally, the judge's reference both to *Franks v. Delaware,* supra, and *United States v. Barnes,* supra, in his oral opinion shows that he understood counsel's point and reached the merits of the issue. Under the circumstances, we will not hold that appellant is foreclosed from making the argument here.

On the merits, appellant urges that the judge's handling of the witness Jones denied appellant his right to compulsory process under the sixth amendment and to a hearing in accordance with due process standards under the fifth amendment. There is no doubt that appellant had the right under the sixth amendment to subpoena Gloria Jones to testify on his behalf at the suppression hearing. See *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967); *Ronson v. Commissioner of Corrections,* 604 F.2d 176, 178 (2d Cir.1978) (per curiam). However, the right to compel witnesses to testify is not absolute, see *Ronson v. Commissioner of Corrections,* supra, 604 F.2d at 178, and may be limited by the witness' proper invocation of a fifth amendment privilege against self-incrimination. See, e.g., *United States v. Gay,* 567 F.2d 916, 919 (9th Cir.), cert. denied, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978). Though it can be argued to the contrary, see Westen, the Compulsory Process Clause, 73 Mich.L.Rev. 71, 167 (1974) (suggesting the ability of the government to grant use immunity),[5] there may well be situations where the two rights—to compulsory process and against self-incrimination—are irreconcilable. In such circumstances, a defendant's right to call a witness may be effectively nullified by the witness' refusal to answer questions on fifth amendment grounds. See *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972); *United States v. Goodwin,* 625 F.2d 693, 700 (5th Cir.1980).

The government argues that, putting all else aside, this is such a case of irreconcilable conflict and we should, therefore, simply affirm. But on this record, we cannot be sure this is so. To begin with, Jones did not properly assert her fifth amendment privilege. Though a prudent judge should inform a witness of the dangers of testifying, see *United States ex rel. Robinson v. Zelker,* 468 F.2d 159, 162 n. 5 (2d Cir.1972), cert. denied, 411 U.S. 939, 93 S.Ct. 1892, 36 L.Ed.2d 401 (1973), the witness herself must assert the claim that answers to questions might reasonably implicate her in a crime or provide evidence leading to proof of criminal behavior. Cf. *Matter of Grand Jury Empanelled February 14, 1978,* 603 F.2d 469, 477 (3d Cir.1979). At the suppression hearing, Jones expressly refused to invoke the fifth amendment

---

4. We understand appellant's attack to be on the Ehnes affidavit which permitted the initial search of apartment 1–A. While the subsequent Hollander affidavit incorporated the Ehnes affidavit, the Ehnes affidavit contained the explicit assertion that Jones told the marshals that Bullion could be found in apartment 1–A.

5. The status of defense witness immunity has been the topic of considerable discussion among the commentators, e.g., Note, The Right to Have Use Immunity Granted to Defense Witnesses, 91 Harv.L.Rev. 1266 (1978); Note, Witness for the Defense: A Right to Immunity, 34 Vand.L.Rev. 1665 (1981), and the courts compare, e.g., *Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir.1980) with *United States v. Turkish,* 623 F.2d 769, 771–79 (2d Cir.1980), cert. denied, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). The latter case indicates that this circuit has not been receptive to the idea.

privilege; instead, she responded to the judge's inquiries that she would "not like" to, and was unwilling to, testify. However, a witness' mere unwillingness to testify is inadequate to sustain a fifth amendment claim, see, e.g., *Piemonte v. United States,* 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961); *United States v. Doe,* 478 F.2d 194 (1st Cir.1973), in the absence of a determination by the court that "substantial and 'real', and not merely trifling or imaginary, hazards of incrimination [exist]." *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968). See also *Kastigar v. United States,* supra, 406 U.S. at 444–45, 92 S.Ct. at 1656.

■ Moreover, only questions which might elicit incriminatory answers are barred by a proper fifth amendment claim. *United States v. Zappola,* 646 F.2d 48, 53 (2d Cir.1981), prohibits a blanket assertion of a fifth amendment privilege and, instead, mandates the court to "undertake a particularized inquiry to determine whether the [fifth amendment] assertion was founded on a reasonable fear of prosecution as to each of the posed questions." In the case before us, it is not at all clear, for example, that the answer to the critical question: "Did you tell the marshals that Bullion was in apartment 1–A?" would reasonably implicate Jones in criminal activity. Of course, as the government points out in its brief to us, it could cross-examine Jones once she takes the stand. How narrowly the government's questions should be circumscribed to avoid impairing Jones' fifth amendment privilege and what the consequences of that would be are questions for the district court in the first instance, should it be necessary to reach them. We leave such particularized inquiries to the district court on remand.

■ Finally, we note that prior to and during her testimony, Gloria Jones requested that counsel be appointed for her to render advice concerning her fifth amendment privilege. Judge Bramwell apparently believed that under the Criminal Justice Act, 18 U.S.C. § 3006A (West Supp.1982), he was precluded from appointing counsel

for a person other than a defendant in a criminal proceeding. We do not believe, however, that the Criminal Justice Act repeals or displaces a court's "inherent authority to do those things reasonably necessary for the administration of justice in the exercise of [its] jurisdiction", cf. *Kovarik v. County of Banner,* 192 Neb. 816, 224 N.W.2d 761, 763 (1975), including the power to appoint counsel to represent indigents. See generally *United States v. Dillon,* 346 F.2d 633, 636–38 (9th Cir.1965), cert. denied, 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966) (tracing age-old professional obligation on bar to represent indigents without compensation). The Criminal Justice Act simply supplements this inherent power by providing for the compensation of counsel for what had previously been gratuitous service.

Moreover, it is at least arguable that the Criminal Justice Act applies here. While the appointment of counsel for Jones at this stage does not appear mandated by the sixth amendment or by federal law, but cf. *In re DiBella,* 518 F.2d 955, 958–59 (2d Cir.1975), the 1970 amendments to the Criminal Justice Act, Pub.L. No. 91–447, 84 Stat. 916 (amended 1970), expanded coverage of the Act "to include those instances where judicial decisions or Federal statutes may require the appointment of counsel...." S.Rep. No. 91–790, 91st Cong., 2d Sess. 5 (1970); see also VII Guide to Judiciary Policies and Procedures, § 2.01(A)(4) (Administrative Office of the U.S. Courts Transmittal 4, December 24, 1978). This language suggests that judicial appointment of counsel may carry with it application of the Criminal Justice Act. The Act itself states compensation is available to an indigent "for whom the Sixth Amendment to the Constitution requires the appointment of counsel or for whom, in a case in which he faces loss of liberty, any Federal law requires the appointment of counsel." 18 U.S.C. § 3006A(a)(4). Thus, it is possible, although unclear, that the Act would apply here before Jones testifies, on the theory that if she refused to answer questions on the basis of improper fifth amend-

ment considerations, she would be risking contempt proceedings and loss of liberty.

In any event, we need not decide the issue now. Because we believe that appellant should have been able to question Jones further at the suppression hearing, we are remanding the case to the district court to afford appellant another opportunity to do so. Should Jones appear as a witness without counsel, be unable to retain counsel herself and request that one be appointed, it would be wise for the district court to appoint counsel to advise her with respect to her fifth amendment privilege. It is up to the district court in the first instance whether to appoint counsel under its inherent authority to insure the fair and effective administration of justice or under the Criminal Justice Act. The government contends that if counsel is appointed, the advice will certainly be to invoke the fifth amendment privilege. Of course, the final determination as to whether the privilege is appropriate is with the court. This claim is speculative, as is the government's argument that should Jones take the stand, she would surely lie. Whatever truth there may be as to Jones's motive to fabricate, that is not for us to determine, and appellant should have the opportunity to present the testimony, in any event. In this respect, we do not understand the government to be alleging that Jones's testimony would be cumulative, immaterial or irrelevant, cf. *United States v. Taylor,* 562 F.2d 1345, 1367 (2d Cir.), cert. denied, 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977).

### III.

In conclusion, we remand this case to the district court for further proceedings consistent with this opinion. We note that it is not necessary for the district court to conduct a de novo suppression hearing. Rather, the court may evaluate any further testimony from Jones in light of the testimony already received on the suppression issue.[6] We do not believe it would be appropriate

to vacate the conviction at this time, as appellant requests, since Judge Bramwell may well again conclude on remand that there is insufficient evidence that the affidavits upon which the search warrants were based were prepared by means of deliberate falsehood or in reckless disregard of the truth. We hold only that appellant should be given a fair opportunity to question Gloria Jones on the issue in accordance with this opinion.

Case remanded to the district court.

---

**6.** Of course, on remand, the district court is not precluded from hearing additional evidence

from other witnesses.