09-5191-cr
United States v. Antonio Miguel Arias

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 7th day of January, two thousand eleven.

Present:      AMALYA L. KEARSE,
              JOHN M. WALKER, JR.,
              ROSEMARY S. POOLER,
                   *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                              *Appellee*,

          -v.-                                                  09-5191-cr

ANTONIO MIGUEL ARIAS, also known as GILBERTO MIRANDA,
also known as MIGUEL,

                              *Defendant-Appellant*.

_____

For Appellant:       Gary A. Mastronardi, Bridgeport, CT.

For Appellee:        H. Gordon Hall and Sandra S. Glover (*on the brief*), Assistant United
                     States Attorneys, *for* David B. Fein, United States Attorney, District of
                     Connecticut.

Appeal from the United States District Court for the District of Connecticut (Thompson, *J.*).

**ON CONSIDERATION WHEREOF**, **IT IS HEREBY ORDERED**, **ADJUDGED**, **AND DECREED** that the judgment of said district court be and hereby is **AFFIRMED**.

Antonio Miguel Arias appeals from convictions of conspiracy, and attempt, to possess with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii). Arias was sentenced principally to 30 years in prison, with 10 years of supervised release. Arias's convictions arise from a scheme to import cocaine from Colombia in shipments of bananas. We assume the parties' familiarity with the underlying facts, procedural history, and issues presented on appeal.

First, Arias argues that the district court clearly erred by admitting certain out-of-court statements presented at trial as coconspirator statements within the scope of Federal Rule of Evidence 801(d)(2)(E).

We review for clear error a district court's findings regarding "whether there was a conspiracy involving the declarant and the nonoffering party, and whether the statement was made during the course and in furtherance of the conspiracy." *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 137 (2d Cir. 2008) (brackets and internal quotation marks omitted).

Having reviewed the record in light of the controlling substantive principles, we find that the district court did not clearly err in finding that the declarant's statements and independent corroborating evidence showed that the declarant was a member of the conspiracy, *see Bourjaily v. United States*, 483 U.S. 171, 181 (1987), and that the statements were made to "provid[e] reassurance to a coconspirator . . . or inform[] coconspirators as to the progress or status of the conspiracy," *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993).

Second, Arias argues that the district court violated his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor when the district court denied his motion to compel the testimony of an alleged FBI confidential informant.

Arias's defense at trial was that his brother Alex, not he, was involved in the cocaine conspiracy. Arias relied on Government-disclosed FBI reports by an alleged FBI confidential informant ("CI"), dated July and August 2007, that did not mention (Antonio) Arias but stated that Alex Arias, his brother, was a member of the conspiracy. The Government refused to disclose further information about the CI.

Before trial, Antonio Arias subpoenaed the CI. Arias wanted to show that the CI "was so well placed [in the conspiracy] that if [Antonio] Miguel Arias was involved in that conspiracy, [the CI] would certainly have known about it." Expecting that the CI would invoke the Fifth Amendment privilege against compulsory self-incrimination, Arias requested an evidentiary hearing at which the district court would "determine . . . whether or not [the CI] has a privilege in the first place." Arias stated that he would ask only about "information which had been obtained and provided by [the CI] under the supervision of the government and during the course of his cooperation."

The district court denied Arias's motion. It did so without holding a hearing at which Arias could ask the CI questions and the district court could determine which, if any, of the questions the CI had a privilege not to answer. The court stated that:

> Delving into whether [the CI] was so "well-placed" in the cocaine

2

conspiracy that he would necessarily have had information regarding defendant Arias's involvement would require [the CI] to respond to a wide array of questions concerning activities, undoubtedly including illegal activities, in which he engaged that could have resulted in him being "well-placed," or not.

Given "the implications of the questioning to which he would be subjected on both direct examination by defendant Arias and cross-examination by the government," the district court said it was "easy to see . . . that responsive answers could furnish a link in the chain of evidence needed to prosecute [the CI] for a federal crime."

The Government argues that the CI's Fifth Amendment right supersedes Arias's Sixth Amendment right, and thus the district court correctly prevented Arias from compelling the CI to testify. Arias, by contrast, argues that the district court did not undertake a particularized inquiry to determine whether the CI's Fifth Amendment assertion was founded on a reasonable fear of prosecution as to the "specific areas of inquiry sought to be covered in questioning [the CI]."

Although a valid Fifth Amendment claim "provide[s] a justification for compromising an accused's Sixth Amendment rights," *United States v. Rodriguez*, 706 F.2d 31, 36 (2d Cir. 1983), "only questions which might elicit incriminatory answers are barred by a proper [F]ifth [A]mendment claim," *United States v. Bowe*, 698 F.2d 560, 566 (2d Cir. 1983). "[A] blanket assertion" of a Fifth Amendment privilege is insufficient. *Id.* Rather, the district court must "undertake a particularized inquiry to determine whether the [Fifth Amendment] assertion was founded on a reasonable fear of prosecution as to each of the posed questions." *United States v. Zappola*, 646 F.2d 48, 53 (2d Cir. 1981); *Rodriguez*, 706 F.2d at 37 ("[O]nce a witness has claimed [a Fifth Amendment] privilege, the district court must determine whether that claim is valid in relation to the subject area about which inquiry is sought."). Indeed, "Fifth Amendment privilege claims should be closely scrutinized because allowing a witness not to testify compromises the Sixth Amendment right of an accused 'to have compulsory process for obtaining witnesses in his favor.'" *United States v. Lumpkin*, 192 F.3d 280, 285 (2d Cir. 1999) (quoting *Washington v. Texas*, 388 U.S. 14, 17 (1967)).

Here, Arias sought to ask about the following:

> I'm going to be asking him questions about [1] what he did under FBI supervision in cooperation with the FBI; [2] the things that he reported to the FBI; [3] the things that he knew about [] the conspiracy that he reported to the FBI. And I'm going to be asking him that to show how well placed he is in the conspiracy and how much, you know – how he was in a position that was of trust with this conspiracy. And then, once I've satisfied that, once I've accomplished that, then the next question is: [4] Did you ever hear about Antonio Arias?

3

In addition, Arias stated that:

> [T]he questions that I would address to [the CI] do not have to do with any criminal activity he might have dome before he started assisting the FBI or after he stopped assisting the FBI. I intend to ask him questions only relating to the period of time within which he was assisting the FBI. And the critical period would be from the beginning of the alleged conspiracy in this case, would be around February or March of '07 through July or into August of '07, about halfway through August of '07.

Arias argues that the district court failed to determine whether the CI had "a reasonable fear of prosecution," *Zappola*, 646 F.2d at 53, as to any or all of the above four questions. First, Arias argues that the district court did not determine whether, as Arias alleged, the CI had immunity for certain activities or during a certain time frame as a result of the CI's cooperation with the FBI. Further, Arias argues that the district court, having denied Arias's request for a hearing with the CI to determine the CI's Fifth Amendment claims, misapprehended the scope of questioning by Arias. The court stated that Arias would ask "a wide array of questions concerning activities, undoubtedly including illegal activities, in which [the CI] engaged that could have resulted in him being 'well-placed.'" Arias had stated that he would limit his inquiry to four areas of questions, although he proposed to begin his inquiry in "February or March of '07," before the date of the first Government-disclosed FBI report of cooperation by the CI.

We do not decide whether the district court erred by failing to "closely scrutinize" the CI's privilege claim, *Lumpkin*, 192 F.3d at 285, thus "compromis[ing] an accused's Sixth Amendment rights," *see Rodriguez*, 706 F.2d at 36. Nor do we decide whether the district court erred by upholding the CI's Fifth Amendment privilege not to answer Arias's questions based on "the implications of the question[s]" that the CI might have received on "cross-examination by the government."

On the facts of this case, we find that if the district court erred, the error was harmless. A reviewing court may disregard constitutional error if it is "able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). In this case, the cocaine importer testified that he had met Antonio Arias, agreed to Arias's plan to import cocaine in pallets of bananas, and then imported hundreds of kilograms of cocaine, which Antonio Arias received. Further, at trial Arias questioned an FBI Special Agent who dealt with the CI, and the Special Agent testified that the CI never mentioned Antonio Arias. Because the Special Agent's testimony substantially overlapped with the questions Arias wanted to ask the CI, and the jury actually rested its verdict on the first-hand testimony of the cocaine importer, "the guilty verdict actually rendered in this trial was surely unattributable to the [alleged] error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (emphasis omitted).

4

We have considered Arias's remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk